UNITED STATES of America,
Plaintiff-Appellee,

v.

Terry Lee STRUYF,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald Orvell WILLIAMS,
Defendant-Appellant.

Nos. 81–5349, 81–5494.

United States Court of Appeals,
Eleventh Circuit.

March 9, 1983.

Geoffrey C. Fleck, Miami, Fla., for defendant-appellant in No. 81–5349.

Lawrence W. Rosen, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant in No. 81–5494.

Kenneth W. Lipman, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee in both cases.

Before TJOFLAT, KRAVITCH and HATCHETT, Circuit Judges.

TJOFLAT, Circuit Judge:

Appellants Struyf and Williams were convicted in the district court of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846 (1976); Williams was also convicted of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1976) and 18 U.S.C. § 2 (1976). We affirm the convictions.[1]

I.

Both appellants urge that the district court erroneously refused to dismiss the indictment because the government's enforcement technique violated their due process rights. Appellants' arrests arose out of the same Drug Enforcement Agency (DEA) operation upheld in *United States v. Savage*, 701 F.2d 863 (11th Cir. 1983). Because the facts of Struyf's case do not differ substantially from those in *Savage*, we affirm Struyf's conviction based on the reasoning expressed therein.

The government's conduct toward Williams is distinguishable from its conduct in *Savage* because the government's informant, Howard Tharpe, who was used to solicit buyers of marijuana, was Williams' former brother-in-law. Williams testified at trial that at least at one time he and Tharpe had been close friends. On cross-examination, Williams stated that he had been divorced from Tharpe's sister for nine years. He admitted that he did not see Tharpe for three to four years after the divorce, during which time Tharpe was living in Tennessee while Williams was living in Miami, Florida. Williams began seeing Tharpe occasionally when Tharpe returned to Miami, which occurred three to four years prior to trial.[2]

Williams testified that about three months prior to his arrest, which occurred on July 30, 1980, Tharpe started coming by his house and talking about drug deals. Williams testified that Tharpe came to his house about six to eight times in May, at least ten times in June, and about eight times the last two weeks in July. According to Williams, on these occasions and during phone conversations, Tharpe told Williams that unidentified persons were chasing him and threatening to kill his children; that his wife had to have a lung removed; that he had stomach cancer; and that he needed money desperately.

Williams also called three witnesses who testified collectively that they had seen Williams upset either after or while he had talked with Tharpe either in person or on the phone.[3] One witness testified that he was at a restaurant with Williams and Tharpe, during which time Tharpe told Williams that his family was being harassed. In addition, DEA agent George A. Auflick, who supervised the government's operation, testified that Tharpe had been an informant with the DEA for the greater part of

---

1. Struyf and Williams, although codefendants, were tried and convicted separately. Struyf waived his right to a jury trial; Williams did not. Their cases were consolidated on appeal.

2. Williams' trial took place in April 1981. Williams was arrested in July 1980.

3. The government elicited from one witness on cross-examination that the witness could not be sure Williams had in fact spoken to Tharpe on the phone while appearing upset; Williams had only told the witness that Tharpe was the other party to the phone conversation.

two years prior to the date of Williams' arrest; that he, Auflick, had never met Williams until the date of arrest; that he had had phone conversations with Williams concerning a cocaine deal he was trying to set up with Williams prior to Williams' arrest; and that during the course of these conversations and on the date of Williams' arrest he thought that Tharpe was Williams' brother-in-law. All of the above testimony was uncontradicted.

Regardless whether Williams' testimony and that of his witnesses should be credited, and regardless whether Tharpe's statements to Williams, if made, were true, we do not believe the above facts make out a due process violation. *See United States v. Tobias*, 662 F.2d 381 (5th Cir. Unit B 1981).[4] The DEA merely set up a scheme in which its agents posed as marijuana sellers and hired confidential informants to round up buyers. Obviously, these informants, including Tharpe, believed it was in their interest to round up as many buyers as they could. The facts thus portray a government informant who out of self-interest independently selected and approached his former brother-in-law to engage in a marijuana deal.[5] The informant described his financial and other problems to his former brother-in-law, asked his former brother-in-law to engage in marijuana deals, and obtained the cooperation he sought. These facts do not establish a due process violation.

Rather, Williams made out an arguable case for entrapment, which the jury, who had the opportunity to judge the demeanor of the witnesses, rejected.[6] This jury finding is important because it is a finding that Williams was predisposed to commit the crimes of which he was convicted. Although we might consider it extreme and outrageous for a largely unsupervised DEA informant to solicit innocent persons into drug deals by invoking their sympathies,[7] we do not consider it extreme and outrageous under the facts of this case for such an informant to invoke the sympathies of a former brother-in-law already predisposed to engage in dealings in marijuana. Thus, we reject Williams' due process claim.

## II.

■ Appellant Struyf asserts that he was denied his right to a speedy trial under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174 (1976 & Supp. V 1981) (the Act) and under the sixth amendment to the Constitution. Under the Act

[I]n any case in which a plea of not guilty is entered, the trial of a defendant ... shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

*Id.* § 3161(c)(1) (Supp. V 1981).

Section 3161(h) of the Act sets forth those periods of delay excluded in computing the time within which the trial must be commenced. The following exclusions are relevant to Struyf's claim: "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing or other prompt disposition of such motion," *id.* § 3161(h)(1)(F) (Supp. V 1981); "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," *id.* § 3161(h)(1)(J) (Supp. V 1981); "[a] reasonable period of delay when the defendant is joined for trial with a co-defendant as to

---

4. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), we adopted as precedent decisions of the Unit B panel of the Former Fifth Circuit.

5. The record is barren of any evidence that the government suggested to Tharpe that he approach Williams in particular.

6. We recognize that Williams argues he was entrapped as a matter of law. The doctrine of entrapment as a matter of law did not survive the Supreme Court's decision in *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). *United States v. Rodriguez,* 585 F.2d 1234, 1240 n. 5 (5th Cir.1978).

7. Of course we do not decide this question.

878

whom the time for trial has not run and no motion for severance has been granted," *id.* § 3161(h)(7) (1976).

Struyf's argument that the statutory time period was exceeded rests in large part on his inclusion of the time periods during which various pre-trial motions of his codefendants were pending.[8] Section 3161(h)(7), however, makes clear that " 'an exclusion applicable to one defendant applies to all codefendants.' " *United States v. Fogarty,* 692 F.2d 542, 546 (8th Cir.1982) (quoting *United States v. Edwards,* 627 F.2d 460, 461 (D.C.Cir.), *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980)). This court has interpreted section 3161(h)(7) in the same manner. *United States v. Varella,* 692 F.2d 1352, 1358 (11th Cir.1982).

Excluding those periods during which pre-trial motions of Struyf's codefendants were pending, we find only thirty-one days of includable time between the date the indictment was filed and the date of trial, computed as follows:

| Defendant | Date | Event | Days Elapsed |
|---|---|---|---|
| All defendants | 08–27–80 | Indictment (Record, vol. 1, at 1) | |
| | | | 7 |
| Struyf | 09–04–80 | Motion to withdraw (*Id.* at 5) | |
| | 09–22–80 | Order (*Id.* at 97) | |
| Gidus | 09–11–80 | 9 motions (not part of record) | |
| | 09–22–80 | Order (*Id.* at 96) | |
| Struyf | 09–18–80 | 22 motions (*Id.* at 12–95) | |
| | 10–02–80 | Order (*Id.* at 111) | |
| Williams | 09–25–80 | 3 motions (*Id.* at 98–109) | |
| | 10–02–80 | Order (*Id.* at 111) | 12 |
| Struyf | 10–15–80 | Motion to suppress (*Id.* at 115) | |
| | 02–03–81 | Order (Record, vol. 2, at 164) | |
| Struyf | 10–21–80 | Motion to travel (Record, vol. 1, at 120) | |
| | 12–04–80 | Order (Record, vol. 2, at 143) | |
| Struyf | 10–27–80 | Motion to dismiss (*Id.* at 132) | |
| | 02–03–81 | Order (*Id.* at 164) | |
| Williams | 10–24–80 | Motion to adopt Struyf's motion to suppress (*Id.* at 124) | |
| | 11–06–80 | Order (Record, vol. 4, at 11, 69) | |
| Williams | 11–06–80 | FIRST HEARING ON MOTION TO SUPPRESS (Record, vol. 4, at 1–126) | |
| | 11–13–80 | Motion to transfer (Record, vol. 2, at 141) | |
| | 12–15–80 | Order (*Id.* at 145) | |
| Struyf | 12–18–80 | Additional Memorandum in Support of Motion to Suppress (*Id.* at 146) | |
| Gidus | 12–23–80 | Order to Respond (*Id.* at 153) | |
| | 01–28–81 | SECOND HEARING ON MOTION TO SUPPRESS | |
| | 02–03–81 | Order on motions (*Id.* at 164) | |
| | | | 9 |
| Struyf | 02–13–81 | Motion for discharge (*Id.* at 180) | |
| Williams | 02–18–81 | Petition for review (*Id.* at 184) | |
| | 02–27–81 | Order (*Id.* at 203) | |
| | | | 3 |
| Struyf | 03–03–81 | Trial | |
| | | Total elapsed time | 31 |

Because the amount of includable time was well within the seventy-day limit, we reject Struyf's claim that he was denied his right to a speedy trial under the Act.

Concerning a defendant's constitutional right to a speedy trial, the court applies "a balancing test in which the conduct of the prosecution and that of the defendant are weighed." *United States v. Varella,* 692 F.2d 1352, 1359 (11th Cir.1982).

The United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, outlined the factors to be considered: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertions of his right; and (4) the prejudice to the defendant. "The first prong of *Barker,* the length of the delay, is merely a threshold 'triggering mechanism.' The Court need not inquire into the other factors unless there has been a delay of such length as to be 'presumptively prejudicial.' "

*Id.* (quoting *United States v. Edwards,* 577 F.2d 883, 888 (5th Cir.1978)).

■ We hold that the seven month delay in this case was not "presumptively prejudi-

---

**8.** Struyf entered into a stipulation with the government in which he waived trial by jury; codefendants Williams and one Gidus were tried before a jury.

cial" under the first prong of the *Barker* test. Accordingly, we need not inquire into the other factors. *Cf. Varella,* at 1359 and cases cited therein (concerning delay from the date of the arrest of, or service with a summons on, the defendant to the filing of the indictment or information). Thus, we deny Struyf's claim that he was denied his constitutional right to a speedy trial.

AFFIRMED.