JAMES H. FAULKNER, Retired Justice.
John Lee Story was indicted for two counts involving the unlawful sale of cocaine, in violation of § 13A-12-211, Code of Alabama 1975. Following a jury trial, Story was found not guilty as to the first count of the indictment, but was found guilty as to the second count of the indictment and was sentenced as a habitual offender to 30 years’ imprisonment for his conviction on the second count.
I
The testimony in this case concerned two separate incidents involving the alleged unlawful distribution of cocaine occurring on June 7, 1989 (count I of the indictment), and on June 16 1989 (count II of the indictment).[1] Story was found not guilty of the offense charged in count I, but testimony relating to that count will be discussed herein where relevant to the offense charged in count II.
The first witness for the State, Donna Arrington Pogue, a police officer employed by the City of Valley and also employed as an undercover agent in a drug enforcement operation in Chambers County, testified that she first met Story at his residence in Lanett on June 7, 1989. At that time she went to Story’s residence equipped with a hidden microphone and accompanied by an informant named Kathy Van Meter.
According to Pogue, the informant preceded Pogue to the door of Story’s residence, spoke with Story briefly, summoned Pogue, and introduced her to him. The two women followed Story into his house and engaged in casual conversation during the course of which Pogue told him that she liked his hair. They discussed “partying” at a nightclub called “A1 Who’s.”
Pogue next testified that during the course of the conversation, she and the informant asked Story if he could get some cocaine for them. According to Pogue, Story repeatedly told her that he did not have any cocaine, that he did not “do” cocaine, and that he did not sell cocaine. The informant asked Story if he knew where to get some cocaine, and he replied affirmatively. Pogue then gave Story $80, and he left the house for approximately 15 minutes, returning with 2 clear, heat-sealed bags containing a white powdered substance resembling cocaine and a bag containing vegetable matter resembling marijuana, both of which had been purchased with Pogue’s $80. Pogue testified that she allowed Story to have enough marijuana to roll one marijuana cigarette, and that she and the informant took the remainder of the marijuana and all of the white powdered substance with them when they left. According to Pogue, Story tried to put his *995 arm around her as he walked her to the car and told her that she could see him anytime without bringing someone else with her. Pogue and the informant then drove to a cemetery where they turned over the material they had received from Story to certain Lanett police officers. Story was never charged with the unlawful distribution of the marijuana that Pogue and the informant received from Story on June 7, 1989.
Pogue testified that, on June 16, 1989, she called Story at his place of employment and arranged to meet him at the Kroger parking lot in Lanett at 7:00 p.m. that evening to purchase some cocaine for a “friend.” Although Pogue denied that she brought up the subject of going with Story to “A1 Who’s” that evening, the telephone conversation, which was recorded, begins with Pogue’s asking Story: “Do you want to get together and go to A1 Who’s tonight?”
Pogue met Story in the parking lot as planned. She was again wired and followed by other police officers who recorded her conversation with Story and videotaped the transaction. According to Pogue, she got out of her car and walked to the driver’s side of Story’s van and asked him if he had the cocaine. Story, who is black, replied that he would have to have the money before he could go get it and requested that Pogue, who is white, get in his van because they might look suspicious. Po-gue told Story that people do not think anything about blacks and whites meeting these days and entered his van and gave him $50. Pogue then exited the van, and Story drove out of the parking lot, returning in approximately 20 minutes. Po-gue got back in the van, and Story handed her two clear, heat-sealed plastic bags containing a white powdered substance.
According to Pogue, while she and Story were talking in the van, he brought up the subject of “A1 Who’s” and asked her repeatedly to go there with him. Pogue “played along” with Story’s request and replied that she had to go to a friend’s birthday party but said that, if she could get away, she would meet Story at “A1 Who’s” later that evening. Pogue testified that she did not go to “A1 Who’s” that evening. After Pogue and Story parted company, she went to another location where she turned over the two bags of white powdered substance to Officer Dean Van Meter.
Pogue denied that she did anything to lead Story on romantically, either on June 7, 1989 or June 16, 1989, and that the informant had done nothing of a similar nature in her presence.
Officer Dean Van Meter, a detective with the Lanett police department, testified that, on June 7, 1989, the hidden microphone that Pogue wore in Story’s residence was not connected to a recording device. Officer Van Meter also testified that the informant, Kathy Van Meter, was his former sister-in-law and that Ms. Van Meter was also present with Pogue during another undercover operation. Officer Van Meter stated that he did not know whether Ms. Van Meter had sexual relations with Story or the target of the other operation, but that he did know that she received no compensation or other reward for assisting Po-gue in either that case or the Story case.
Sergeant Richard Price, a detective in the Lanett police department, testified that, on June 7 and 16, 1989, he monitored the transmissions from the microphone hidden on Pogue’s person and that no tape recording was made of the June 7, 1989, transmission. Price also testified that it appeared to him from monitoring the June 7, 1989, transmission that a social date between the two women and Story to go to “A1 Who’s” later that evening had been made. Price testified that no effort was made to follow Story on either June 7 or June 16 when Story left to purchase the white powdered substance.
Sergeant Price and David Mattox, chief of security at the hospital where Story worked, testified that Story’s reputation relative to the use or sale of drugs as of June 7, 1989, was bad. Certified copies of Story’s two 1987 convictions for the sale of cocaine were then admitted into evidence. Expert testimony revealed that the white powdered substance that Pogue received *996 from Story on June 7 and 16, 1989, was cocaine hydrochloride.
The first defense witness, testified that he met Pogue and Kathy Van Meter on July 2, 1989, and went with them in their car to his house where he sold a small amount of marijuana to Ms. Van Meter. This witness also testified that later that evening Ms. Van Meter returned alone and they spent the night together in her car, engaging in sexual relations. This witness was charged with the sale of marijuana, a charge which was subsequently reduced to possession of marijuana for personal use.
Kathy Van Meter, whose whereabouts were unknown, was unavailable to testify at Story’s trial.
Story then testified in his own behalf. Story stated that in June 1989 he was employed as supervisor of housekeeping at the George H. Lanier Memorial nursing home where he had been employed for nine years. Story testified that the 1987 convictions arose when he obtained some marijuana and cocaine for a friend and that after his conviction he was allowed to retain his job.
Story testified that prior to the June 7, 1989, meeting, he was introduced to Pogue at his house by Kathy Van Meter, with whom he had previously smoked marijuana. Pogue and Ms. Van Meter asked Story to get some cocaine for them during this initial meeting, but, despite their repeated requests, Story refused. According to Story, after Pogue and Ms. Van Meter left that evening, Ms. Van Meter returned alone, spent the night with Story, and had sexual relations with him. Story testified that he was concerned because Ms. Van Meter was white, and he made her leave his house before daybreak so as not to arose suspicion.
Story then testified that on June 9, 1989, Pogue and Ms. Van Meter came to his home and that Ms. Van Meter entered the house first and told Story that she would stay with him that night if he would get them some cocaine. Pogue then entered the house, and the women kept talking about drugs, and Story continued to tell them that he did not use or sell drugs. Story testified that Pogue started talking about how they could go out and have a good time and that she liked his hair and she touched it. According to Story, the women told him that they had to go somewhere that evening but they would come back, and they kept bothering him about cocaine and he finally left the house and got some cocaine for Ms. Van Meter. He also got some marijuana, and they sat and smoked it. After they received the cocaine, the women left, but Story understood that both of them were to return that night and go out with him. He did not see either one of them again that night.
Story testified that on June 16, 1989, he understood that he had a firm date with Pogue, that Pogue gave him the money to purchase cocaine that day, and that he made the purchase because Pogue induced him to purchase the cocaine in exchange for sex. Story further testified that he made the cocaine purchase on June 7, 1989, because Pogue and Van Meter induced him to purchase the cocaine in exchange for sex.
The sole issue raised on appeal is whether the trial court committed reversible error in failing to grant Story’s motion for acquittal either at the conclusion of the State’s case or at the conclusion of all evidence because Story was entrapped as a matter of law.
The burden of proof for a defendant seeking to raise the defense of entrapment is articulated in United States v. Andrews, 765 F.2d 1491 (11th Cir.1985), cert. denied, Royster v. United States, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986):
“A defendant who seeks to raise a defense of entrapment must first come forward with evidence sufficient to raise a jury issue ‘that the government’s conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.’ ... When the defendant makes such a showing, the burden shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the offense charged.... Appellate review of a jury decision on *997 entrapment is directed to whether the evidence was sufficient to enable a reasonably-minded jury to reach the conclusion that the defendant was predisposed to take part in the illicit transaction.”
765 F.2d at 1499 (quoting United States v. Dickens, 524 F.2d 441, 444 (5th Cir.1975), cert. denied, Glenos v. United States, 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976).
“The doctrine of entrapment as a matter of law did not survive the Supreme Court’s decision in Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976).” United States v. Struyf, 701 F.2d 875, 877 n. 6 (11th Cir.1983):
The record reveals that Story presented sufficient evidence to raise a jury question on the issue of entrapment, and the trial court properly submitted the entrapment question to the jury. The State, however, introduced evidence of predisposition that was sufficient to enable a reasonable-minded jury to reach the conclusion that Story was predisposed to take part in the illicit transaction on June 16, 1989. The evidence was therefore sufficient to support the jury’s verdict with respect to count II of the indictment.
Accordingly, the judgment of the circuit court is affirmed.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a Retired Supreme Court Justice, and his opinion is hereby adopted as that of this court.
AFFIRMED.
All the Judges concur.

. Although the two counts of the indictment do not specify the dates of the alleged sales of cocaine, the trial court prepared verdict forms for the jury which clearly delineated that count I of the indictment referred to the alleged June 7, 1989, sale and that count II of the indictment referred to the alleged June 16, 1989, sale.