**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**MOBILE MATERIALS, INC. and Gerald
O. Philpot, Defendants–Appellants.**

No. 86–1756.

United States Court of Appeals,
Tenth Circuit.

March 22, 1989.

904

Mack Muratet Braly of Mack Muratet Braly & Associates, Tulsa, Okl., for defendants-appellants.

Andrea Limmer, Atty., Dept. of Justice, Washington, D.C. (Douglas H. Ginsburg, Asst. Atty. Gen., W. Stephen Cannon, Deputy Asst. Atty. Gen., and John J. Powers, III, Atty., Dept. of Justice, Washington, D.C., with her on the brief), for plaintiff-appellee.

Before McKAY, MOORE and
BALDOCK, Circuit Judges.

PER CURIAM.

This case arose as one of several prose-
cutions in a campaign by the Justice De-
partment to rid the Oklahoma and Kansas
highway construction industry of anticom-
petitive bidding practices. In view of the
issues on appeal, it will be helpful to recite
the procedural history of the case in some
detail.

On August 22, 1984, a grand jury sitting
in the Western District of Oklahoma re-
turned a seven-count indictment against
Mobile Materials, Inc. (the Corporation),
Mobile Materials Company (the Partner-
ship), and Gerald O. Philpot, the president
of both firms. Count one of the indictment
charged all three defendants and unnamed
co-conspirators with participation in a con-
spiracy to submit rigged bids to, or with-
hold bids from, the Oklahoma Department
of Transportation and the Oklahoma Turn-
pike Authority in violation of section 1 of
the Sherman Act, 15 U.S.C. § 1 (1982).
Counts two and three charged Mr. Philpot
and the Corporation with making false, fic-
titious, and fraudulent statements to the
United States Department of Transporta-
tion in violation of 18 U.S.C. § 1001 (1982);
and counts four through seven charged all
three defendants with mail fraud under 18
U.S.C. § 1341 (1982) in connection with the
progress payments claimed from the state
of Oklahoma.

Prior to trial, the defendants moved to
dismiss the indictment on the ground that
both the Corporation and the Partnership
had been dissolved more than two years
before the indictment was returned. The
district court granted the motion as to the
Corporation and the Partnership, finding
its ruling compelled by our decision in
*United States v. Safeway Stores*, 140 F.2d
834 (10th Cir.1944). The court declined to
dismiss the criminal charges lodged against
Mr. Philpot, however, reasoning that its
order as to the Corporation and Partner-
ship had no bearing on the allegations
against him and no effect on the govern-
ment's burden of proof. Rec. vol. I, doc. 37
at 4–5.

Subsequently, the government filed an
interlocutory appeal under 18 U.S.C.
§ 3731 (1982 & Supp. IV 1986) to contest
the district court's dismissal of the indict-
ment and moved for a continuance in the
prosecution of Mr. Philpot under section
3161(h)(8) of the Speedy Trial Act, 18 U.S.
C. §§ 3161–3174 (1982 & Supp. II 1984).
The district court granted the govern-
ment's motion, concluding that "the ends of
justice served by granting such a continu-
ance outweigh the best interests of the
public and the Defendant in a speedy trial."
Rec. vol. I, doc. 49 at 1. The government's
appeal was presented to us in the case of
*United States v. Mobile Materials, Inc.*,
776 F.2d 1476 (10th Cir.1985).

In *Mobile Materials*, we reversed the
district court's ruling that under Oklahoma
law a criminal prosecution cannot be main-
tained against a corporation that was dis-
solved before the return of the indictment.
On December 9, 1985, we issued a mandate
to the district court to conduct further pro-
ceedings in the prosecution of the three
defendants consistent with that holding.
As a first step in reactivating the prosecu-
tion, the district court held a status confer-
ence on January 9, 1986, in which it grant-
ed requests by both parties for permission
to file motions and amended documents.
Rec. vol. I, doc. 59.

Following an eight-day jury trial begun
on March 3, 1986, the Partnership was ac-
quitted of all charges. However, Mr. Phil-
pot and the Corporation were convicted of
the Sherman Act violation and one count of
making false and fraudulent statements to
the United States Department of Transpor-
tation. The district court sentenced Mr.
Philpot to serve two concurrent three-year
terms of imprisonment and to pay fines
totaling $110,000. The court also imposed
fines totaling $510,000 against the Corpora-
tion.

On appeal, Mr. Philpot and the Corpora-
tion (the appellants) raise four issues: (1)
whether the case should have been sub-
mitted to the jury on a theory of a grand
conspiracy to rig bids, (2) whether the
Speedy Trial Act was violated by the pro-

tracted length of the prosecution, (3) whether the trial judge's attitude and demeanor convinced the jury that the judge thought the appellants were guilty, and (4) whether the sentences were grossly disproportionate to others given for the same crimes and imposed without regard for the circumstances of the defendants.

### Sufficiency of the Indictment

Under the general heading of the first issue presented, the appellants raise several arguments. We only consider the contention that the indictment is insufficient.[1,2] Appellants suggested below that count one failed to provide sufficient information to enable them to prepare a defense, contrary to the sixth amendment to the United States Constitution. They also argue that count one may be based on facts not presented to the grand jury, contrary to the fifth amendment.

■ The sufficiency of an indictment is judged by 1) whether the indictment contains the elements of the offense and apprises the defendant of the charges he must meet and 2) whether the defendant would be protected against double jeopardy by a judgment on the indictment. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). Appellants' real complaint about count one

of the indictment is that its breadth allowed the introduction of co-conspirator testimony and allowed the jury to consider evidence of a single conspiracy to rig bids, of which the appellants were a part. Appellants' Brief In Chief at 12–14 (citing *United States v. Heath*, 580 F.2d 1011, 1026 (10th Cir.1978) (McKay, J., dissenting), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979)). Indeed, appellants have challenged the admissibility of co-conspirator statements and the sufficiency of the evidence to support a single conspiracy, but have not provided us with those portions of the transcript needed for our review. *See, e.g., United States v. Washita Constr. Co.*, 789 F.2d 809, 821–22 (10th Cir.1986) (court reviewed trial testimony and judge's findings in rejecting defendants' claims that co-conspirator hearsay admitted improperly). We decline to consider these issues in the absence of a record containing those portions of the transcript on which the parties rely.[3] *United States v. Tedder*, 787 F.2d 540, 542 n. 2 (10th Cir.1986); *United States v. Strand*, 617 F.2d 571, 577 (10th Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980); *Rachbach v. Cogswell*, 547 F.2d 502, 504 (10th Cir.1977).

■ Turning to the sufficiency of the indictment, the entire document may be

**1.** Under the general heading of the first issue presented, appellants also argue that 1) co-conspirator hearsay and evidence concerning "unrelated" jobs should not have been admitted, 2) there was a variance between the single conspiracy charged and the conspiracy proved at trial because the rigged bids were actually multiple conspiracies and 3) the government should not have informed the jury that its witnesses had rigged bids and were immunized. We do not reach these issues because of appellants' failure to designate the trial transcript for our review. *See* Appellants' Designation of Record on Appeal filed September 29, 1986 (failing to designate complete trial and sentencing transcript). The few pages of trial transcript that were designated, rec. vols. II, III, IV and V, simply do not address the evidence concerning these points. As expected, the parties differ sharply concerning characterization of that evidence.

**2.** The appellants offer only a cursory argument on this issue in their Brief in Chief. They refer us, however, to their Brief in Support of the Motion to Dismiss Count One for Vagueness, a

document submitted to the district court and now included as part of the record before us. It is in the supporting brief that the appellants ground their objection to the language of count one in the guarantees of the fifth and sixth amendments. Rec. vol. I, doc. 44 at 4–6.

**3.** Fed.R.App.P. 10(b)(2) provides:
(2) If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.
At the time the record was designated in this case, a general order established the procedure for designating a record in the Tenth Circuit. *See* In Re: Adoption of Procedures for Simplifying Designation and Transmission of Records on Appeal from the District Court (10th Cir. July 17, 1985) (unpublished order). Although the order sought to reduce the designation of unnecessary materials, it retained the time-honored rule that "[a]ppeals will be heard on the record." *Id.* § IV(f).

considered. *United States v. Metropolitan Enter., Inc.,* 728 F.2d 444, 452–53 (10th Cir.1984). For purposes of testing the sufficiency of the indictment, the essential elements of a conspiracy under §§ 1 & 2 of the Sherman Act are "time, place, manner, means and effect." *United States v. Greater Kansas City Retail Coal Merchants' Ass'n,* 85 F.Supp. 503, 508 (W.D. Mo.1949). In this case, the paragraphs preceding count one and count one itself establish these elements.

15 U.S.C. § 1 provides that contracts, combinations and conspiracies in restraint of trade are illegal. Tracking the statutory language, paragraph 14 of the indictment charged that "the defendants and co-conspirators engaged in a combination and conspiracy in unreasonable restraint of trade and commerce" from July 1978, through February 1982. Rec. vol. I, doc. 1 at 7. Paragraph 9 of the indictment explains the sealed competitive bidding process used by the Oklahoma Department of Transportation and Oklahoma Turnpike Authority. *Id.* at 4–5. Highway construction contracts are awarded to the lowest responsible bidder following the opening of sealed bids. *Id.* Paragrah 15 of the indictment charges that a substantial term of the conspiracy "was to submit collusive, noncompetitive, and rigged bids to, or withhold bids from, the Oklahoma Department of Transportation and the Oklahoma Turnpike Authority for the award of highway construction projects in Oklahoma." *Id.* at 7. Paragraph 16 outlines the practices in furtherance of the conspiracy allegedly engaged in by the appellants and other conspirators including: 1) discussing the submission of prospective bids on projects, 2) agreeing on the successful low bidder on projects, 3) submitting intentionally high, noncompetitive bids or withholding bids on construction projects and 4) submitting bid proposals with false statements and entries. *Id.* at 8. Paragraph 17 spells out the anticompetitive effects of the conspiracy, primarily the lessening of price competition.

[4–7] The indictment charges the appellants with a bid-rigging conspiracy in the award of highway projects during a 43–month period, from July 1978 through February 1982. Thus, the time element is satisfied. The conspiracy is alleged to have existed in the Western District of Oklahoma. Rec. vol. I, doc. 1 at 9. Thus, the place element is satisfied. The indictment specifies the manner and means of the conspiracy. There was advance agreement as to which co-conspirator would be the low bidder on highway construction projects. With this object in mind, some noncompetitive bids were submitted, and some bids were withheld. The indictment also specified the effect of this practice, a lessening of price competition in the highway construction industry. This indictment has "more factual detail" than the brief indictment in *United States v. Cecil,* 608 F.2d 1294 (9th Cir.1979) (per curiam), relied on by appellants. *See United States v. Miller,* 771 F.2d 1219, 1227 (9th Cir.1985) (rejecting application of *Cecil* to a Sherman Act indictment).

■ Three weeks after the indictment, the government came forward and filed a bill of particulars listing eleven highway construction projects, twelve companies, and sixteen persons which the government claimed were part of the conspiracy. Thereafter, the government amended its bill of particulars by listing six highway construction projects involving the appellants directly and three others involving other co-conspirators. The indictment supplemented by the bill of particulars certainly put the defendants on notice of the charges against them. *United States v. Bi–Co Pavers, Inc.,* 741 F.2d 730, 734–35 (5th Cir.1984) (highway bid rigging indictment specifying one project sufficient). Of course, it would have been preferable for the information in the bill of particulars to have been contained in the indictment as it apparently was in the sister case of *United States v. Washita Constr. Co.,* 789 F.2d 809 (10th Cir.1986). But this circuit has never held that a failure of an indictment to list specific transactions or name all co-conspirators renders an antitrust indictment invalid.

To the contrary, in *United States v. Armour & Co.*, 137 F.2d 269, 271 (10th Cir.1943), the court held an indictment sufficient which charged a conspiracy to fix prices of hogs in the Oklahoma City market even though the dates of particular transactions or the names of the actors were not contained in the indictment. The indictment charged the offense and merely detailed the elements or the means by which the conspiracy to restrain trade operated. *Id.* at 271, 272 (Phillips, J., concurring). Likewise, in *Frankfort Distilleries v. United States*, 144 F.2d 824, 832 (10th Cir. 1944) (en banc), *rev'd on other grounds*, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945), the court considered two Sherman Act indictments with multiple defendants. The cases concerned an alleged conspiracy to fix retail liquor prices and another to monopolize the retail grocery trade. In upholding the general nature of the indictments, the court commented that the indictments did not list: 1) the specific products involved, 2) the producers, wholesalers, and retailers affected, nor 3) the persons involved in the conspiracies. But that did not affect the sufficiency of the indictments:

> [T]hese indictments each charge in general terms a conspiracy to restrain interstate trade and commerce, or monopolize such trade and commerce, as the case may be, substantially in the language of the Act. And if the allegations in respect to the manner and means of effecting the object of the combination and conspiracy are not set forth in sufficient detail, the remedy is to apply for a bill of particulars.

*Id.* at 832. The Tenth Circuit relied on *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), in which the Court restated that a conspiracy indictment must state a common intent, but that "[t]he particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object of the conspiracy ... is not essential to an indict-

ment." *Id.* at 66, 62 S.Ct. at 463. For that type of specificity, a bill of particulars may be sought. *Id.* The Supreme Court has emphasized repeatedly that the test of the sufficiency of an indictment is *not* whether it could be more definite and certain, for that is the function of a bill of particulars. *United States v. Debrow*, 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953); *Rosen v. United States*, 161 U.S. 29, 34, 16 S.Ct. 434, 435, 40 L.Ed. 606 (1896); *Cochran and Sayre v. United States*, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704 (1895) ("Few indictments ... are so skilfully drawn as to be beyond the hypercriticism of astute counsel—few which might not be made more definite by additional allegations.").

▮ The indictment in this case contains the elements necessary to allege an antitrust violation. In *Metropolitan Enter., Inc.*, 728 F.2d at 452–53, we considered a similar indictment charging bid-rigging on highway projects in Oklahoma and found that the indictment contained the necessary elements. It is the presence of the necessary elements which determines the sufficiency of the indictment. The essence of a § 1 Sherman Act violation is a combination and conspiracy in restraint of trade. *Eastern States Lumber Ass'n v. United States*, 234 U.S. 600, 609, 34 S.Ct. 951, 953, 58 L.Ed. 1490 (1914). The combination and conspiracy is prohibited without regard to the success or failure of the concerted activity. *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 224 n. 59, 60 S.Ct. 811, 845 n. 59, 84 L.Ed. 1129 (1940). Overt acts need not be alleged. *Nash v. United States*, 229 U.S. 373, 378, 33 S.Ct. 780, 782, 57 L.Ed. 1232 (1913); *Miller*, 771 F.2d at 1226. The bill of particulars served to "offset a lack of factual specificity." [4] Given the substantive law in this area, the mere furnishing of a bill of particulars in no way means the indictment was insufficient.

---

**4.** If an indictment or information does not state all of the essential elements, it cannot be cured by a bill of particulars that alleges facts establishing the missing element. The bill may offset a lack of factual specificity, but it will not save an indictment so vague that it fails completely to charge an offense.

W. LaFave & J. Israel, *Criminal Procedure* § 19.2(f) (1984).

The appellants liken this case to *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); however, the offense involved in this case is far different. In this case, we are dealing with a per se antitrust violation against a backdrop of established law for evaluating the sufficiency of antitrust violations. *Russell* involved 2 U.S.C. § 192, which concerns the refusal by a congressional witness "to answer any question pertinent to the question under inquiry." The indictments in *Russell* did not identify the "question under inquiry," the subject under congressional inquiry. *Russell*, 369 U.S. at 752, 82 S.Ct. at 1041. This impeded the defense because a witness may refuse to answer questions which are not pertinent to the subject matter under inquiry. *Id.* at 755, 82 S.Ct. at 1042. After an exhaustive discussion of the substantive criminal law involved, the Court stated:

> As has been pointed out, the very core of criminality under 2 U.S.C. § 192 is pertinency to the subject matter under inquiry of the questions which the defendant refused to answer. What the subject matter actually was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.

*Id.* at 764, 82 S.Ct. at 1047. The failure to specify the subject matter would force a defendant "to go to trial with the chief issue undefined." *Id.* at 766, 82 S.Ct. at 1048.

The indictment in this case is light years away from the indictment in *Russell*. As noted, the core of criminality under § 1 of the Sherman Act is conspiracy in restraint of trade. The indictment alleges a per se violation of the Sherman Act, namely a bid-rigging conspiracy concerning public highway construction. The government contended that the conspiracy was self-perpetuating and could be plugged into at any time by the participants. *See United States v. Beachner Constr. Co.*, 729 F.2d 1278, 1283 (10th Cir.1984) (the ability to rig

bids due to "a tacit understanding based upon a long course of conduct" constitutes a single conspiracy in violation of § 1). The indictment does more than merely repeat the words of the statute; it describes this particular conspiracy. Unlike *Russell*, the chief issue in the first count of the indictment was clearly defined.

 The fact that various highway projects were not listed in the indictment does not render it invalid. "[I]t is well settled that conspiracies under the Sherman Act are not dependent on any overt act other than the act of conspiring." *Socony–Vacuum Oil Co.*, 310 U.S. at 224 n. 59, 60 S.Ct. at 845 n. 59. Thus, overt acts of the conspiracy in restraint of trade need not be specified in the indictment. Appellants assert that the time period covered in the indictment involved the awarding of over 700 projects by the Oklahoma Department of Transportation. Rec. vol. I, doc. 44 at 3. Even accepting this information, the identification of which projects were alleged to be a direct part of the conspiracy involving defendants was the function of a bill of particulars. In *United States v. Fishbach and Moore, Inc.*, 576 F.Supp. 1384, 1388 (W.D.Pa.1983), the defendant electrical contractors sought a bill of particulars specifying which of 150 electrical projects over a seven-year period were allegedly subject to a bid-rigging scheme. The government contended that individual projects were not relevant and that all bids during the period were the subject of the indictment. *Id.* After considering the nature of a Sherman Act conspiracy and the requirements of a sufficient indictment as stated in *Russell*, the district court required a bill of particulars to allow the defendants to better prepare for trial. *Id.* at 1389. Likewise, in *United States v. Campbell Hardware*, 470 F.Supp. 430, 433–34 (D.Mass.1979), the district court recognized that great factual specificity is not required in Sherman Act indictments and declined to dismiss the indictment. A bill of particulars was the proper avenue for greater factual detail. *Id.*

In this case, the government voluntarily came forward with a bill of particulars and

an amended bill of particulars specifying particular projects, companies and persons thought to be directly involved. It cannot be said that the appellants were unable to prepare a defense given the indictment; indeed, appellants do not so contend on appeal.

Nor does *Russell* support an argument that the indictment contravenes the fifth amendment by not assuring that appellants were convicted only upon facts found by the grand jury. Again, this argument misapprehends the nature of indictment in *Russell*. In *Russell*, the Court was insistent that an indictment under 2 U.S.C. § 192 "state the question under ... inquiry as found by the grand jury." *Russell*, 369 U.S. at 771, 82 S.Ct. at 1051. The Court stated:

> A grand jury ... must necessarily determine what the question under inquiry was. To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

*Id.* at 770, 82 S.Ct. at 1050. This oft-quoted language read in context admits of no more than the requirement that an indictment must contain the essential elements of the offense as determined by the grand jury. In *Russell*, the indictments did not contain an essential element of the offense because they did not state the subject under congressional inquiry. The grand jury was required to make a determination of the subject under inquiry. *Id.* Thus, a grand jury must find all essential elements of the offense and recite these elements in the indictment.

All of the essential elements of a Sherman Act violation were contained in this indictment. The indictment did more than track the statutory language;[5] it described a conspiracy in restraint of trade. Although we cannot say whether each project relied upon by the government was presented to the grand jury, there simply is no requirement that every factual detail of a charge be presented to a grand jury. The government is not so limited in its proof. Here, the grand jury found elements of a bid-rigging conspiracy involving the appellants. The indictment notified the appellants of the charge. Greater factual specificity was acceptably provided by the bill of particulars.

### Violation of the Speedy Trial Act

The Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1982 & Supp. II 1984) (the Act), requires that a defendant charged by indictment must be brought to trial within seventy days of the date the indictment is filed or the date the defendant first appears before a judicial officer of the court, whichever occurs later. *Id.* § 3161(c)(1). However, section 3161(h) provides for the exclusion of certain periods of delay in the calculation of the seventy-day term. Four types of delay, each treated by a distinct subsection of section 3161(h), are at issue in this appeal. In addition, various other provisions of the Act are implicated by the course of proceedings prior to trial.

The appellants argue that the trial court erred in granting a continuance in the prosecution of Mr. Philpot under section 3161(h)(8)(A).[6] They do not dispute that

---

5. An indictment which merely tracks the statutory language may well be sufficient provided the statute contains all the essential elements of the crime. *Hamling*, 418 U.S. at 117, 94 S.Ct. at 2907; *United States v. Zavala*, 839 F.2d 523, 526 (9th Cir.) (per curiam), *cert. denied*, — U.S. ——, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988).

6. Section 3161(h)(8)(A) excludes
 [a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the

some period of delay was proper while the government appealed the dismissal of all charges against the Corporation. However, the appellants maintain that only the application of section 3161(h)(1)(E) [7] coupled with section 3161(h)(7) [8] could stay the entire prosecution, and that not even the force of these provisions was sufficient to halt the proceedings for the period of delay actually incurred. The sum of the appellants' claim is that all charges in the indictment must be dismissed [9] because the government failed to bring them to trial within the time allowed by section 3161(c)(1). By the appellants' calculations, the last possible date on which either the Corporation or Mr. Philpot could have been brought to trial was February 17, 1986, two weeks before the jury in the case was actually empanelled.[10]

The appellants are correct in their assertion that sections 3161(h)(1)(E) and (h)(7), not section 3161(h)(8)(A), governed the exclusion of certain periods of delay incurred in the prosecution of this case.[11] Section 3161(h)(1)(E) tolled the speedy trial clock of the Corporation while the government's interlocutory appeal was before this court. Similarly, section 3161(h)(7) excluded several "reasonable" periods of delay that punctuated the prosecution of Mr. Philpot. Our conclusion on this point follows directly from our holding in *United States v. Theron*, 782 F.2d 1510 (10th Cir.

1986), a decision announced fifteen months after the district court granted the continuance in this case.

The appellant in *Theron* was one of twelve co-defendants indicted for conspiracy and mail fraud. When released on bail, ten of Mr. Theron's co-defendants moved for an "ends of justice" continuance under section 3161(h)(8) of the Speedy Trial Act due to the complexity of the case. Mr. Theron, who remained in custody, opposed the motion and filed his own motion under the Act to demand an immediate trial or dismissal of his indictment. The district court granted the co-defendants' motion for continuance but denied Mr. Theron's motion for trial or dismissal. Mr. Theron then sought a writ of mandamus from this court ordering the trial judge to begin trial or dismiss his indictment.[12]

In reviewing Mr. Theron's claims, our examination of the text and the legislative history of the Speedy Trial Act led us to conclude that the district court had abused its discretion in granting a continuance under section 3161(h)(8).

It appears that the trial court relied upon three factors to justify the continuance: (1) the codefendants' need for preparation time; (2) the complexity of the case; and (3) the desirability of trying all defendants at once. In the context of this case these are either improper or insuffi-

record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

7. Section 3161(h)(1)(E) requires the court to exclude "any period of delay resulting from other proceedings concerning the defendant, including but not limited to ... delay resulting from any interlocutory appeal."

8. Section 3161(h)(7) requires the court to exclude "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."

9. Section 3162(a)(2) provides: "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the ... indictment shall be dismissed on motion of the defendant."

10. "The date that trial commences for the purposes of the Speedy Trial Act is the date that a jury is selected." *United States v. Scalf*, 760 F.2d 1057, 1059 (10th Cir.1985) (citing *United States v. Martinez*, 749 F.2d 601, 604 (10th Cir. 1984)).

11. Therefore we do not address the appellants' alternate argument that even if the trial court were correct in applying section 3161(h)(8), the seventy-day period in the prosecution of Mr. Philpot lapsed six weeks before trial actually began.

12. Subsequently, Mr. Theron filed a motion for severance and release pending trial; that motion was also denied. An appeal of that ruling was consolidated with Mr. Theron's request for the writ of mandamus.

cient factors to justify an ends-of-justice continuance under § 3161(h)(8).

*Theron,* 782 F.2d at 1512–13. With one addition,[13] these are precisely the factors cited by the district court in this case for granting the government a continuance under section 3161(h)(8). *See* rec. vol. I, doc. 49.

In *Theron,* we noted that "[s]ubsection (h)(7) treats exclusion of time because codefendants are in the case, not subsection (h)(8)." *Id.* at 1513. Thus we concluded that "holding that a complex multiple defendant case is enough to toll the Act under subsection (h)(8) would emasculate the specific separate provision in subsection (h)(7)...." *Id.* Broadening this statement only slightly for the purposes of this case, we conclude that the misapplication of section 3161(h)(8) will undermine not only section (h)(7), but also section 3161(h)(1)(E).

Choosing the correct statutory provisions to regulate the periods of delay in this prosecution only begins the task before us. We still must examine the effects of these provisions to determine whether the appellants' conclusion, that all charges against them must be dismissed, is warranted. A temporary split in the appellants' joint trial proceedings occurred when the government filed an interlocutory appeal from the dismissal of charges against the Corporation and simultaneously moved for a continuance in the prosecution of Mr. Philpot during the pendency of the appeal. As a result, the legal consequences of the delay in the prosecution of the Corporation may appear unrelated to those arising from the delay in the pretrial proceedings against Mr. Philpot. But, in fact, the operation of the Act upon the prosecution of the Corporation determines the effect of delay on the government's case against Mr. Philpot.

The internal workings of the Act as applied to this case are complex. For the sake of clarity in the exposition of our analysis, we will address the application of the Act to the Corporation separately from its application to Mr. Philpot. We begin with the Corporation.

The appellants were arraigned on August 22, 1984, the same day the grand jury returned its indictment. The seventy-day period began to run for the Corporation the following day, August 23, 1984. *United States v. Richmond,* 735 F.2d 208 (6th Cir. 1984); *United States v. Campbell,* 706 F.2d 1138, 1139 (11th Cir.1983). From that date until October 9, 1984, the day the district court dismissed all charges against the Corporation,[14] forty-seven days elapsed. However, due to the filing of pretrial motions in the case, all but seven days of this period are excludable under section 3161(h)(1)(F).[15] From October 10 to November 5, 1984, the period following the dismissal but preceding the government's appeal under 18 U.S.C. § 3731, twenty-six nonexcludable days elapsed. Thus, a total of thirty-three days passed before jurisdiction over the Corporation was withdrawn from the district court. The appeal was under the jurisdiction of this court from November 6, 1984, when the government filed its notice of appeal, until December 9, 1985, when we issued our mandate to the district court. This entire 398–day period is excludable under section 3161(h)(1)(E).

█ Upon our remand of the case to the district court, the government acquired an additional seventy days in which to

---

**13.** The fourth factor was a conflict in scheduled trial dates the government would incur if the continuance were not granted.

**14.** The government states that the district court's order dismissing all charges against the Corporation (and Partnership) was entered on November 19, 1984, the same day the court granted the government's motion for a continuance in the prosecution of Mr. Philpot. *See* Brief of Appellee at 13. This is incorrect; the order was entered October 9, 1984. *See* rec. vol. I, doc. 37. The error renders the government's

calculations of excludable time inaccurate. *See* Brief of Appellee at 13, 19.

**15.** This section states:

(1) Any delay resulting from other proceedings concerning the defendant, including but not limited to—

....

(F) delay resulting from any pre-trial motion, from the filing of the motion through the conclusion of the hearing on, or the prompt disposition of, such motion....

bring the Corporation to trial.[16] This period began December 10, 1985, the day after our mandate issued. By January 8, 1986, thirty days of the period had passed without any advance in the prosecution of the appellants. None of this time is excludable under the Act. On January 9, 1986, the district court held a pretrial status conference attended by Mr. Philpot and counsel representing both Mr. Philpot and the Corporation. At the conference, the government asked to submit an amended bill of particulars while the appellants requested time in which to submit additional pretrial motions. The court allowed the appellants fifteen days (until January 24, 1986) to file their motions and granted the government an additional ten days (until February 3, 1986) in which to respond. Joint Docketing Statement at 2–3. The status conference was "a proceeding concerning the defendant"; January 9 is therefore excludable under section 3161(h)(1). The question remains, however, whether all or even part of the twenty-five day period from January 10 until February 3, 1986, is excludable under that same section or any other provision of the Speedy Trial Act. Had the appellants submitted motions on January 9, the running of the seventy-day period would have been tolled for a period prescribed by section 3161(h)(1)(F). But on that date the appellants (and the government) merely expressed the intent to file additional documents; nothing was submitted to the court.

Section 3161(h)(1) does not specify the entire set of "proceedings concerning the defendant" that will result in excludable periods of delay. To the contrary, its introductory language states that delay may result from proceedings "including, but not limited to," those found in subsections 3161(h)(1)(A) through (h)(1)(J). Moreover, the Senate Report on the 1979 Amendments to the Act declares that "[t]he list [of proceedings concerning the defendant] is not intended to be exhaustive. It is representative of procedures of which a defendant might legitimately [sic] seek to take advantage for the purpose of pursuing his defense." S.Rep. No. 212, 96th Cong., 1st Sess. 10 (1979).

The open-ended construction of section 3161(h)(1) and the invitation implicit in the legislative history of the Act cannot be ignored. We believe that a permissible addition to the list of proceedings that automatically toll the speedy trial clock would be a grant of time by the district court—in response to a written or oral request by the defendant—for the preparation of written pretrial motions.[17] Such a grant of time undoubtedly allows the accused to better pursue a defense and is therefore consistent with the objective of section 3161(h)(1). But it serves another salutary purpose as well. The grant allows the district court to dispose of the difficult question of whether the defendant's interests are better served by an uninterrupted march to trial or by a pause in proceedings at the defendant's

**16.** Section 3161(d)(2) provides in part:
 If the defendant is to be tried upon an indictment or information dismissed by the trial court and reinstated following an appeal, the trial shall commence within seventy days from the date the action occasioning the trial becomes final, except that the court retrying the case may extend the period for trial not to exceed one hundred and eighty days from the date the action occasioning the trial becomes final if the unavailability of witnesses or other factors resulting from the passage of time shall make trial within seventy days impractical.
 In *United States v. Scalf,* 760 F.2d 1057, 1059 (10th Cir.1985), we defined "the date the action occasioning the retrial becomes final" in section 3161(e) as the date the mandate issues from the court of appeals to the trial court. The reason for this is straightforward. Prior to that date,

the court of appeals retains control of the judgment; the appellants may request a rehearing or the court may decide to rehear the case en banc. Once the mandate issues, however, the trial court regains jurisdiction over the case. The same definition applies to the phrase where it appears in section 3161(d)(2).

**17.** Whether a grant of time to the government for preparation of a written motion ought to be excluded when the government initiates the request for delay is a question we do not decide in this appeal. However, we recognize that when the district court carves out a block of time to accommodate the defendant's request to submit pretrial motions, that period must necessarily include as an excludable increment a reasonable time for the government to respond to the defendant's submissions.

request for the preparation of pretrial motions. Because our addition to section 3161(h)(1) automatically suspends the seventy-day period, the burden of answering that crucial question lies with the defendant, the one best acquainted with the defensive strategy opposing the government's case. The defendant may either submit to the expeditious prosecution contemplated by the Act or elect to postpone his trial briefly to better formulate a defense; the choice remains entirely his. An additional benefit of removing the "burden of choice" from the court in this situation is that it precludes a later charge by the defendant that the court entered an arbitrary pretrial procedural ruling that prejudiced his ability to prepare his defense properly.

Our determination on this point does not ignore the Senate Judiciary Committee's reservations about enlarging the period automatically excluded by pretrial motions practice. Addressing changes in the computation of excludable delay under the 1979 amendments to section 3161(h)(8), the Committee noted that even though "some witnesses contended that all time consumed by motions practice, from preparation through their disposition, should be excluded, the Committee finds that approach unreasonable. This is primarily because, in routine cases, preparation time should not be excluded where the questions of law are not novel and the issues of fact simple." S.Rep. No. 96–212, 96th Cong., 1st Sess. 33–34.[18] The Committee also urged the courts to exercise caution in granting an "ends of justice" continuance under section 3161(h)(8) of the revised statute to accommodate pretrial motions only "because it will be quite difficult to determine a point at which preparation actually begins." *Id.* at 34.

We note that, as enacted following the 1979 amendments, section 3161(h)(8)(B)

tempers the stern tone of the Committee Report regarding the circumstances under which an "ends of justice" continuance may be granted. Subsection 3161(h)(8)(B)(iv) permits a continuance, even in the absence of an unusual or complex case or novel questions of fact or law, when a failure to grant one "would deny counsel for the defendant or the attorney for the government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

■ Moreover, under our modest expansion of the list of tolling proceedings, there can be no question about when preparation of pretrial motions actually begins. Routine drafting of a motion, unknown to the court until the document is filed, simply does not toll the speedy trial period. Either the trial judge accedes to a specific request for preparation or the trial date moves inexorably closer. The court need never fear the appearance of the defendant on the eve of trial, in an invitation to the government to postpone his prosecution, claiming that his preparation of pretrial motions began the moment after indictment.[19]

■ Having constructed our rule, we now apply it to the case at hand. The period from January 10 to February 3, 1986, was expressly allocated by the district court in part to the defendants for drafting pretrial motions and in part to the government for filing its response. We hold that that entire span of time is excluded from the seventy-day period by section 3161(h)(1).

The remainder of the interval between the Corporation's arraignment and trial is easily accounted for. From February 4 to February 20, 1986, seventeen days elapsed, none of which are excludable. On February 21, the appellants filed their Motion to Dismiss for Violation of the Speedy Trial

---

18. The Committee "would permit through its amendments to subsection (h)(8)(B) reasonable preparation time for pretrial motions in cases presenting novel questions of law or complex facts." S.Rep. No. 96–212, 96th Cong., 1st Sess. 34.

19. In expanding the list of proceedings concerning the defendant as we have, we would point out that ours is not the first circuit to do so. *See United States v. Jodoin,* 672 F.2d 232, 238 (1st Cir.1982); *United States v. Tibboel,* 753 F.2d 608, 610 (7th Cir.1985); *United States v. Wilson,* 835 F.2d 1440, 1444 (D.C.Cir.1987).

Act. The motion was taken under advisement by the court and denied on February 27. This seven-day period is excludable under section 3161(h)(1)(F). Finally, the three days from February 28 to March 2 are not excludable. Thus only fifty nonexcludable days elapsed in the entire prosecution of the Corporation, a total well within the limit prescribed by section 3161(c)(1). Finding no Speedy Trial Act violation in this segment of the case, we turn now to the period of delay associated with the prosecution of Mr. Philpot.

As explained above, the period in which the government's interlocutory appeal resided in this court from October 6, 1984, to December 9, 1985, was excludable under section 3161(h)(1)(E). We have established that the exclusion applied to the seventy-day account of the Corporation, a party to the interlocutory appeal. However, the issue remaining for us to resolve is the extent to which this exclusion and others incurred in the prosecution of the Corporation applied to Mr. Philpot, the Corporation's co-defendant under the indictment.

Section 3161(h)(7) authorizes an exclusion for "[a] reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not yet run and no motion for severance has been granted." In *United States v. Theron*, 782 F.2d 1510, 1514 (10th Cir. 1986), we stated that "[t]he obvious purpose behind the [section 3161(h)(7)] exclusion is to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." We further noted that to satisfy this purpose, "the courts generally have held that *extensions sought by one codefendant toll the limitations period of all.*" *Id.* (emphasis added).

■ Indeed, every court of appeals that has construed section 3161(h)(7) in this context has concluded that an exclusion attributable to one defendant is applicable to all co-defendants. *See United States v. Rush*, 738 F.2d 497, 504 (1st Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985); *United States v. McGrath*, 613 F.2d 361, 366 (2d Cir.1979),

*cert. denied*, 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980); *United States v. Novak*, 715 F.2d 810, 815 (3d Cir.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984); *United States v. Holyfield*, 802 F.2d 846, 848 (6th Cir.1986), *cert. denied*, 479 U.S. 1090, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987); *United States v. Fogarty*, 692 F.2d 542, 546 (8th Cir.1982), *cert. denied*, 460 U.S. 1040, 103 S.Ct. 1434, 75 L.Ed.2d 792 (1983); *United States v. Van Brandy*, 726 F.2d 548, 551 (9th Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 79 (1984); *United States v. Struyf*, 701 F.2d 875, 878 (11th Cir.1983); *United States v. Edwards*, 627 F.2d 460, 461 (D.C. Cir.), *cert. denied*, 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980). The *Guidelines to the Administration of the Speedy Trial Act* (Guidelines) promulgated by the Judicial Conference of the United States have also endorsed this position. *See* Guidelines, Issuance # 36 (Nov. 10, 1984), at 57–58. We now adopt this interpretation and hold that, subject to a "reasonableness" limitation, an exclusion under section 3161(h)(1) attributable to one defendant is applicable to all co-defendants under section 3161(h)(7).

■ The appellants inform us that their review of the case law has not disclosed any precedent in which a delay of 398 days (the period from the first notice of appeal to the issuance of our mandate) has been found reasonable. We respond by pointing out that in deciding whether a period of delay is reasonable, it is essential to measure dimensions other than length. In *Theron*, we recognized that only a multifaceted inquiry is proper when we stated that "[i]n determining reasonableness of the period excluded, *all relevant circumstances* must be considered." *Theron*, 782 F.2d at 1514 (emphasis added).

The first guidepost in our attempt to determine reasonableness must be the legislative history of the Speedy Trial Act. In 1974 the Senate Judiciary Committee explained the function of section 3161(h)(7):

The purpose of the provision is to make sure that S. 754 does not alter the present rules of severance of codefend-

ants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal motion under section 3162.

S.Rep. No. 93–1021, 93d Cong., 2d Sess. 38 (1974). Five years later, while considering amendments to the Act, the Committee addressed arguments for enlarging the time in which a defendant must be brought to trial.

The observation has been made that the rigidity of the time limit will force the courts to disregard the principle of "judicial efficiency." Defendants who are properly charged with the joint commission of an offense should ordinarily be tried together to save time, expense and inconvenience of separate prosecutions. It has been reported that some trial judges have granted severances unnecessarily in multidefendant cases "so that a defendant whose case is moving slowly does not hold up the trial of his codefendants." In its own study the Department [of Justice] studied 180 multidefendant cases. It found no reflection of the occurrence of such incidents. Nor is there an indication of any such occurrence in the data compiled by the Administrative Office. If the Act has been so interpreted to require such a result, the Committee calls to the Senate's attention § 3161(h)(7), which provides specifically for exclusion of "a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom time for trial has not yet run."

S.Rep. No. 96–212, 96th Cong., 1st Sess. 24–25 (1979).

The Committee's remarks support our statement in *Theron* that in the application of the "reasonableness" standard under section 3161(h)(7), judicial efficiency in the trial of multiple defendants is to be preferred to an inflexible adherence to the letter of the Speedy Trial Act. *Theron*, 782 F.2d at 1514. A more forceful yet equally valid expression of the point is the Eleventh Circuit's blunt comment that "[Congress] felt that the efficiency and economy of joint trials far outweighed the desirability of granting a severance where the criterion was simply the passage of

time." *United States v. Campbell*, 706 F.2d 1138, 1142 (11th Cir.1983).

■ We agree that "[w]hether the delay was reasonable will depend on the facts of each case." *United States v. Dennis*, 737 F.2d 617, 621 (7th Cir.), *cert. denied*, 469 U.S. 868, 105 S.Ct. 215, 83 L.Ed.2d 145 (1984). Thus we must also ask whether the factual setting of this case dictates that it is reasonable to delay the trial of one defendant, Mr. Philpot, considering not only judicial economy but also procedural fairness to Mr. Philpot and the Corporation. To answer this question, we examine the role Mr. Philpot plays in the prosecution of the case and his status while awaiting trial.

The opening paragraphs of the indictment identify the three defendants as Mobile Materials, Inc., a corporation, Mobile Materials Company, a partnership, and Mr. Gerald O. Philpot, the president of the Corporation and the managing partner and president of the Partnership. These paragraphs disclose that Mr. Philpot is not only a principal defendant in the prosecution, he is also inextricably caught up in the business affairs of his co-defendants. The indictment also states that when reference is made to an act of either the Corporation or the Partnership, "the allegation shall be deemed to mean the "act ... [of] its *officers, directors, partners*, agents, employees or representatives." Record, doc. 1, at 3 (emphasis added). Moreover, Mr. Philpot is named as a defendant in all seven counts of the indictment, in league with the Corporation (in counts two and three) or with both the Corporation and the Partnership (in counts one, four, five, six, and seven).

■ Whether the government's case unfolds in a single trial with multiple defendants or in a separate proceeding for each defendant, certain aspects of the prosecution remain constant: the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses. But most important to our inquiry here, whichever path the judicial process follows, the government will point to Mr. Philpot as a principal actor in every one of the allegedly illegal transac-

tions it seeks to prosecute. These facts alone favor a delay in the prosecution of Mr. Philpot sufficient to allow a joint trial of all the defendants, *United States v. Sutton*, 801 F.2d 1346, 1365 (D.C.Cir.1986), but there are more facts to consider.

In our determination, we cannot ignore that prior to trial, including the lengthy period of the interlocutory appeal, Mr. Philpot was free on bond. In *Theron*, we commented that other "[c]ourts have excluded *extended periods of delay* when all defendants are out on bail." *Theron*, 782 F.2d at 1514 (emphasis added) (citing *United States v. DeLuna*, 763 F.2d 897, 922–23 (8th Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985)); *accord United States v. Campbell*, 706 F.2d 1138, 1142 (11th Cir.1983); *United States v. Edwards*, 627 F.2d 460, 461 (D.C.Cir.), *cert. denied*, 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980).

Nor can we overlook the fact that throughout the protracted history of this prosecution Mr. Philpot has never filed a motion for severance under Rule 14 of the Federal Rules of Criminal Procedure. *See* Appellants' Reply Brief at 18; *cf. Theron*, 782 F.2d at 1512. Normally, a motion for severance will adequately focus attention upon and allow the district court to relieve unfairness created by delay in favor of a joint trial.

In view of Mr. Philpot's prominent position in the Corporation and the Partnership, his essential participation in all trial proceedings, and his release on bail during trial, we find that the facts of this case argue persuasively for a delay in the prosecution of Mr. Philpot to allow a joint trial with his codefendants.

Finally, in determining the bounds of "a reasonable period," we consult the *Guidelines to the Administration of the Speedy Trial Act, supra*. The Guidelines recommend that in the situation we face here, a period of time excluded under section 3161(h)(7) has the following starting and ending dates:

*Starting Date* In the situation in which the (h)(7) exclusion is based on an exclusion applicable to a codefendant, the starting date is the starting date of the codefendant's exclusion.

*Ending Date* In the situation in which the (h)(7) exclusion is based on an exclusion applicable to a codefendant, the ending date is the ending date of the codefendant's exclusion.

*Guidelines* at 58–59.

 While the Guidelines are not binding on this court,[20] the formula they offer would allow us to avoid severance forced merely by the passage of time. As we have noted, this result is consistent with the purpose of section 3161(h)(7) as indicated by its legislative history and with the holdings of the courts of appeals that have extended the exclusion due to one defendant's delay to all co-defendants. It is also consistent with the goal of the entire Act, which is to provide certainty and fairness for defendants. *See United States v. Campbell*, 706 F.2d at 1143.

We conclude that a delay in the prosecution of Mr. Philpot sufficient to allow his joint trial with his co-defendants is reasonable under section 3161(h)(7). Our method of reaching this result is not one of mathematical calculation, but one that considers the purpose of the Speedy Trial Act, the facts of the case, the status of the defendant, and the recommendations of the Guidelines to the Administration of the Speedy Trial Act. As a result, we do not express section 3161(h)(7)'s "reasonable period" as a fixed span of time, the running of which forces dismissal of an indictment or the severance of a defendant. Rather, we declare that given the context of this case, the operation of section 3161(h)(7) has a twofold result: (1) a single speedy trial clock has been established to govern the timing of the prosecution of both the Corporation and Mr. Philpot, and (2) all excludable periods of delay attributable to the Corporation also apply to Mr. Philpot. Because no Speedy Trial Act violation occurred in the prosecution of the Corpora-

---

**20.** The Guidelines are not binding interpretations of the Speedy Trial Act; they are intended only to advise the federal courts. *See* Guidelines at i.

tion, none occurred in the synchronized prosecution of Mr. Philpot.

### Allegations of Judicial Misconduct

■ The appellants' next argument takes issue with the trial judge's management of the case during trial and during the jury's deliberations. Specifically, the appellants raise three objections: (1) the court's evidentiary rulings were prejudicial to Mr. Philpot's efforts to show that he was not connected to a conspiracy to rig bids, (2) the court interjected unsolicited comments into the trial process, and (3) the court's post-trial admonitions to the jury coerced a verdict adverse to the appellants. We are unable to review these points in the absence of a transcript containing the statements on which the appellants rely. As noted, the responsibility for a proper designation of record lies with the parties, here the appellants, not with the court of appeals. *United States v. Hart*, 729 F.2d 662, 671 (10th Cir.1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985). Moreover, because trial counsel indicates that he failed to object concerning the third point, we are unable to make a plain error assessment in the absence of a complete record.

### Severity of the Sentence Imposed

The appellants argue strenuously that the sentence imposed by the district court is grossly disproportionate to others given for conviction of the same crimes and that the sentence ignores the "individual circumstances" of both Mr. Philpot and the Corporation. The appellants point out that Mr. Philpot received the most severe monetary penalty allowed under section 1 of the Sherman Act and that his term of imprisonment is far in excess of the average sentence imposed for similar Sherman Act violations. In the appellants' view, the sentence is more appropriate for a ringleader of bid-rigging on a multi-state scale and stands as "a further indication of the trial court's antipathy toward these Appellants, which ... permeated the trial itself." Appellants' Brief in Chief at 46. With respect to the Corporation's sentence, the appellants tell us that the total fine of $510,-000.00 is twenty percent greater than the net worth of Mobile Materials, Inc. when it was dissolved in 1982.

■ This court's most comprehensive statement on the prerogative of an appellate court to overturn a sentence was announced in *United States v. Espinosa*, 771 F.2d 1382 (10th Cir.), *cert. denied*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). In that case we explained

> that when a sentence is imposed within statutory limits, it is not ordinarily subject to appellate review. We will review the sentences only if the trial judge based them on "misinformation of constitutional magnitude" or failed to exercise any discretion in the sentencing process. Appellate review is appropriate "when a trial court fails to afford individual treatment, imposes a sentence mechanically, or refuses to consider all the mitigating circumstances." However "a sentencing judge has considerable discretion and leeway in determining, from the totality of the circumstances, the extent of the individual punishment to be meted out for each offense committed."

*Id.* at 1403 (citations omitted); *see also United States v. Brown*, 784 F.2d 1033, 1039–40 (10th Cir.1986). Consistent with our holding in *Espinosa*, our examination of the sentencing phase of trial is limited to a review of the district court's exercise of discretion in meting out punishment.

The penalties imposed on Mr. Philpot for his bid rigging activity, both the three-year term of imprisonment and the $100,000 fine, are permitted under the Sherman Act, 15 U.S.C. § 1. The penalties imposed on Mr. Philpot for his false and misleading statements, both the three-year term of imprisonment and the $10,000 fine, are permitted under the controlling federal statute, 18 U.S.C. § 1001. Precisely the same is true of the sanctions imposed upon the Corporation; they are contemplated by the same statutory provisions.

Peering behind the facial legality of the sentences, as urged by the appellants and permitted under the *Espinosa* standard, we look for evidence that the district court

failed to temper its judgment with consideration for the circumstances of the appellants. The appellants have provided us with nothing pertaining to this case to convince us that the district court imposed sentence mechanically or failed to consider all the materials submitted in mitigation. Thus we conclude that the court remained within the bounds of the discretion allowed it when sentencing defendants. Its ruling is affirmed.

The judgment of the district court is AFFIRMED.

MCKAY, Circuit Judge, dissenting:

I respectfully dissent.

Appellants contend that count one of the indictment returned by the grand jury was "constitutionally and procedurally defective" due to the vagueness of its language. The appellants maintain that the charging section of count one lacks sufficient detail to protect their rights to due process of law guaranteed by the Fifth and Sixth Amendments to the United States Constitution.[1]

Generally, three clauses of the Fifth Amendment are implicated by a claim that an indictment is unconstitutionally vague. The Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury ... nor shall any person be subject for the same offence to be twice put in jeopardy ... nor be deprived of life, liberty, or property, without due process of law...." Of equal relevance is the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation."

In *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the Supreme Court observed that the process of grand jury indictment is designed to guarantee a defendant in a criminal prosecution the "substantial safeguards" of the Fifth and Sixth Amendments. Drawing on the Court's explication in *Russell*, we have held that

> [t]he purposes and requirements for the sufficiency of indictments have been variously stated, but the essentials are clear. First the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet.... And a purpose corollary to the first is that the indictment inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. Furthermore, and of paramount importance, a sufficient indictment is required to implement the Fifth Amendment guaranty and make clear the charges so as to limit a defendant's jeopardy to offenses charged by a group of his fellow citizens, and to avoid his conviction on facts not found, or perhaps not even presented to, the grand jury that indicted him.

*United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.1976) (citations omitted); *see United States v. Bohonus*, 628 F.2d 1167, 1173 (9th Cir.1980). These requirements stand in conjunction with each other; all must be satisfied by the language of an indictment or the indictment is fatally defective.

Though the appellants address all of these requirements in their challenge to count one's sufficiency, their arguments focus on only two: "whether Count One as a whole conveys sufficient information to enable the [appellants] to prepare for trial, and to identify the conduct relied upon *by the Grand Jury* in making the charge." Record, doc. 44, at 6.

When determining whether an indictment is drafted with enough detail to protect a defendant's constitutional rights of due process, we examine the entire document. *United States v. Metropolitan Enterprises, Inc.*, 728 F.2d 444, 453 (10th Cir.1984). This rule applies when the entire indict-

---

1. The appellants offer only a cursory argument on this issue in their Brief in Chief. They refer us, however, to their Brief in Support of the Motion to Dismiss Count One for Vagueness, a document submitted to the district court and now included as part of the record before us. It is in the supporting brief that the appellants ground their objection to the language of count one in the guarantees of the Fifth and Sixth Amendments. Record, doc. 44, at 4–6.

ment is challenged, or where, as here, the sufficiency of only part of the document is at issue. So in responding to the appellants' constitutional challenge to count one, we look first to the charging statement and related provisions of count one, then to the remaining paragraphs of that count, and finally to all "four corners" of the indictment for factual details that will support the government's allegations of collusive, anticompetitive conduct.

The charging statement in paragraphs fourteen, fifteen, and sixteen, the allegation of anticompetitive effects in paragraph seventeen, and the allegation of jurisdiction and venue in paragraph eighteen comprise the heart of count one. These paragraphs read in their entirety:

### OFFENSE CHARGED

14. Beginning at least as early as July 1978, and continuing thereafter at least through February 1982, the exact dates being unknown to the Grand Jury, the defendants and co-conspirators engaged in a combination and conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. section 1).

15. The aforesaid combination and conspiracy consisted of an agreement, understanding, and concert of action among the defendants and co-conspirators, a substantial term of which was to submit collusive, noncompetitive, and rigged bids to, or to withhold bids from, the Oklahoma Department of Transportation and the Oklahoma Turnpike Authority for the award of highway construction projects, some of which were federally funded.

16. For the purposes of forming and effectuating the aforesaid combination and conspiracy, the defendants and co-conspirators did those things which they combined to do, including:

 (a) Discussing the submission of prospective bids on highway construction projects in Oklahoma;

 (b) Agreeing upon the successful low bidder on highway construction projects in Oklahoma;

 (c) Submitting intentionally high, noncompetitive bids, or withholding bids, on highway construction projects in Oklahoma; and

 (d) Submitting bid proposals on highway construction projects in Oklahoma containing false, fictitious, and fraudulent statements and entries.

### EFFECTS

17. The aforesaid combination and conspiracy had the following effects, among others:

 (a) Prices for Oklahoma highway construction projects were fixed and established at artificial and noncompetitive levels;

 (b) Competition for the award of Oklahoma highway construction projects was restrained, suppressed, and eliminated;

 (c) The state of Oklahoma was denied the right to receive competitive bids for highway construction projects; and

 (d) The State of Oklahoma and the United States of America were denied the benefits of free and open competition for the award of highway construction projects.

### JURISDICTION AND VENUE

18. The aforesaid combination and conspiracy was formed and carried out, in part, within the Western District of Oklahoma within the five years preceding the return of this indictment.

Record, doc. 1, at 7–9.

As with the entire indictment challenged in *Russell*, the defect in the charging statement and its complementary provisions lies in their failure "to inform the defendant of the nature of the accusation," *Russell*, 369 U.S. at 767, 82 S.Ct. at 1049, by descending to the particulars of time, manner, and circumstance associated with the alleged offense. *See id.* at 765, 82 S.Ct. at 1047. Paragraph fourteen of the indictment merely sketches the antitrust violation charged by paraphrasing the language of section 1 of the Sherman Act. This derivative of statutory text ignores the rule in

*Russell* that "where guilt depends so crucially upon a specific identification of fact ... an indictment must do more than repeat the language of the criminal statute." *Id.* at 764, 82 S.Ct. at 1047. In addition, it leaves to the remaining sections of the charging statement the substantial task of bringing home to the appellants the facts of the alleged offense.

Paragraph fifteen builds upon the bare charge of unlawful concerted action found in paragraph fourteen. It characterizes the alleged unlawful conduct as bid-rigging but in doing so achieves only two unremarkable results. It plucks the conduct of which the appellants are accused from the vast sea of acts illegal under section 1 of the Sherman Act and ties that conduct to the contract-letting procedures of the Oklahoma Department of Transportation. Given the meager substance of paragraph fourteen, the information supplied in paragraph fifteen is a necessary buttress to the charging statement. Yet the coupling of the two paragraphs does not sufficiently strengthen the definition of the antitrust charge to allow the appellants to prepare their defense.

Paragraph sixteen continues the government's flawed technique of charging collusive conduct. It lists four *types* of overt acts by which the government alleges the appellants advanced their bid-rigging conspiracy but fails to refine the allegations of the two preceding paragraphs. Its coarse parsing of conduct is simply unable to provide the specifications of time, place, and circumstance needed to tell the appellants which of their acts constitute the alleged offense.

Paragraphs seventeen and eighteen conclude the government's definition of the antitrust violation, but their content is inadequate to cure the infirmities of the charging statement. In paragraph seventeen the government claims that prices have been fixed, competition has been restrained, and that Oklahoma and the United States have been denied the benefits of free competition. But nowhere in the paragraph does the government tie these nebulous allegations to specific instances of criminal wrongdoing by the appellants. Paragraph eighteen, the final provision of count one, is similarly ineffective. It merely identifies a broad geographical area in which the government believes at least "part" of the conspiracy transpired. How the government has divided the alleged conspiracy for the purposes of this claim, whether in time or by site of illicit conduct, is not disclosed.

Considering the remainder of count one, we note that paragraphs one through thirteen perform several functions. They define terms peculiar to an indictment charging illegal collusion in the highway construction business, identify the accused, and allege the involvement of unspecified co-conspirators. In addition, the paragraphs claim that interstate trade and commerce are affected by the illegal conduct charged and incorporate an affidavit and regulations pertinent to Oklahoma's contract-letting procedures for highway construction projects. Taken together, these introductory provisions of count one provide a framework on which the remainder of the indictment hangs, but they offer no specific details to bolster the allegation of an antitrust violation.

We turn then to counts two through seven of the indictment for factual detail sufficient to revive count one. The charge under counts two and three is that the appellants falsely represented to a federal agency that they had not participated in any scheme to fix prices when bidding on construction projects. Each count specifies the date on which a bid proposal was submitted and the exact federal-aid highway construction project that is the object of the proposal. The precise drafting of the allegations in both counts contrasts markedly with the loose construction of count one and thoroughly informs the appellants of the charges against them. Though these charges are rooted in the appellants' participation in the Oklahoma highway construction industry, we may not pour their particulars into the empty allegations of count one. To do so would threaten the appellants with factual assertions that may not have been presented to the grand jury, a result which, as we explained in *Radetsky*, the Fifth Amendment will not abide.

The risk of violating this constitutional guarantee springs from the textual differences between count one and counts two and three: paragraph fifteen of count one alleges that only "some" of the unspecified construction projects on which the appellants submitted rigged bids are federally funded. Yet both projects referred to in counts two and three were paid for—at least in part—by federal monies. The single conclusion that we may draw from the conjunction of these statements is that the object of the appellants' alleged antitrust violations are projects different from or in addition to those listed in counts two and three. It is irrelevant which of these possibilities is correct; the existence of either invalidates any attempt to imply a correspondence between the projects at issue in count one and those specified in counts two and three.

Counts four through seven of the indictment contain factual detail comparable to that in counts two and three. Their allegations refer to construction projects by project number and by citation to warrants for payment submitted by the appellants to the Oklahoma Department of Transportation. These references are sufficient to apprise the appellants of which transactions the government believes violate 18 U.S.C. § 1341. However, nothing in the text of these criminal charges compels the conclusion that the projects on which the appellants submitted warrants are the same as those associated with the antitrust violation alleged in count one. As a result, we may not read the specifications of counts four through seven into count one without once again subjecting the appellants to a criminal prosecution based on charges the grand jury may not have considered.

When we explore the entire indictment in search of the particulars necessary to sustain a charge of anticompetitive conduct, we view the same landscape the Court of Appeals for the Ninth Circuit surveyed in *United States v. Cecil*, 608 F.2d 1294, 1296–97 (9th Cir.1979):

The present indictment is a rather barren document. Aside from tracking the language of the pertinent statute in setting out the elements of the offense with which the defendants were charged, the indictment makes only two specific allegations concerning the conspiracies. It states that the conspiracies occurred in Arizona, Mexico, and elsewhere and offers the names of some of the alleged co-conspirators. The indictment fails to state any other facts or circumstances pertaining to the conspiracy or any overt acts done in furtherance thereof. More importantly, the indictment fails to place the conspiracies within any time frame. The language "beginning on or about July, 1975, and continuing thereafter until on or after October, 1975," is open-ended in both directions.

The only specific allegation pertinent to the antitrust violation charged is that a bid-rigging scheme was directed against the Oklahoma Department of Transportation and the Oklahoma Turnpike Authority. Nothing is disclosed about the site (or timing) of illegal activity other than "part" of it occurred in the Western District of Oklahoma. The appellants' co-conspirators are not identified, the circumstances of the collusive dealings are not revealed, and the projects the appellants are accused of rigging are not specified. Finally, the period in which the government claims the conspiracy transpired is anchored as loosely as that in the *Cecil* indictment. The phrase "at least as early as July, 1978 and continuing thereafter at least through February, 1982" describes an unbounded span of time. Moreover, it conflicts with the statement in paragraph eighteen that the combination and conspiracy were formed within five years of August 22, 1984, the date the indictment was returned.[2]

---

**2.** A statistic the appellants have provided indicates but one of the difficulties imposed on them by the indictment's lack of detail. The appellants claim that in the 43–month period mentioned in paragraph fourteen, the Oklahoma Department of Transportation invited bids on more than 700 highway construction projects. Record, doc. 44, at 3. Even if this figure is overestimated by a factor of ten, the number of projects the appellants are left to sort through is guaranteed to exhaust their capacity to mount an informed defense.

The government responds to the appellants' allegations of vagueness with two arguments. Citing our decisions in *United States v. Boston*, 718 F.2d 1511 (10th Cir. 1983), *cert. denied*, 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984), and *United States v. Neal*, 692 F.2d 1296 (10th Cir. 1982), the government first asserts that an indictment is not required to include the evidentiary details of the intended prosecution. However, neither of these cases stands for this broad proposition. In *Boston*, an appeal of a conviction under the Hobbs Act, we said no more than "it is not necessary for the indictment in a Hobbs Act case to allege the exact nature of the interference with commerce." 718 F.2d at 1515. Our holding in *Neal* was similarly tailored to address the point of law at issue. There we distinguished the determination that must be made in prosecutions under 2 U.S.C. § 192 (refusal of witnesses to testify or produce papers) from that which must be made in prosecutions under 18 U.S.C. § 894 (using extortionate means to collect an extension of credit). Because the indictment had adequately alleged that one identified person had repeatedly threatened another in stated locations between certain dates, we concluded that "the content of [the defendant's] alleged threats would of course be material at trial, but greater specificity thereof in view of the other facts alleged in the indictment is not required in order 'to sufficiently apprise the defendant "of what he must be prepared to meet." ' " *Neal*, 692 F.2d at 1302 (quoting *Russell*, 369 U.S. at 764, 82 S.Ct. at 1047).

Even if the holdings of *Boston* and *Neal* were precisely as the government has characterized them, the argument misses the point at issue. The appellants do not contend that the government has failed to disclose its evidence. Rather, they argue that the government has not adequately defined the factual allegations against them which it hopes to support with its evidence.

The government also defends the sufficiency of the present indictment on the ground that others similar to it have withstood appellate court scrutiny. The indictment employed in the prosecution underlying *United States v. Washita Construction Co.*, 789 F.2d 809 (10th Cir.1986), and the indictment at issue in *United States v. Fischbach and Moore, Inc.*, 750 F.2d 1183 (3d Cir.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985), are offered as examples.

The prosecution of Washita Construction Company was in all relevant respects identical to that which the government pursued against the appellants here. In a seven-count indictment, the government charged Washita and its president with submitting collusive, noncompetitive and rigged bids to, and withholding bids from, the Oklahoma Department of Transportation; making false, fictitious, and fraudulent statements; and engaging in mail fraud by receiving progress payments from the state of Oklahoma. While the prosecutions in the two cases may be substantive twins, the language of the indictment returned in *Washita* was not, as the government claims, "essentially identical" to that involved in this matter. The indictment in *Washita* not only charged that the defendants had rigged bids on a specified number of highway construction projects (seven), it also identified the projects by project number and date of contract-letting. 789 F.2d at 812 n. 3. Thus, the defendants in *Washita* were given ample information regarding the particulars of the government's charge and did not even contest the sufficiency of the indictment on appeal.

It is impossible for us to comment upon the language of the indictment brought before the court of appeals in *Fischbach and Moore*. The court's opinion in that case contains only fragmentary quotations from the indictment,[3] and the government

---

3. We learn the details of the prosecution only from the court's statement of the procedural history of the case:

"As a result of investigating [a] bid-rigging scheme, the government accused a number of the electrical contractors and their employees of antitrust violations. The indictment charged them with violating § 1 of the Sherman Act by conspiring to allocate electrical construction projects at the Western Pennsyl-

has not provided a copy of it for us to examine. We note, however, that just as in *Washita,* the sufficiency of the indictment was not challenged on appeal.[4]

In view of the deficiencies described, I believe that count one of the indictment failed to inform the appellants of the "nature and cause of the accusation" against them in violation of the Sixth Amendment. As a result, the appellants were forced to resort to speculation and inference when answering the government's accusations and were thereby deprived of the opportunity to prepare a proper defense.[5]

Although I would reverse on the issue regarding the sufficiency of the indictment, I concur with the majority's disposition of all other issues presented.

---

vania Works, to fix the prices at which those projects were bid, and to submit noncompetitive, collusive, and rigged bids on those projects.
*Fischbach and Moore,* 750 F.2d at 1188.

4. An indictment couched in terms strikingly similar to those challenged here may be found in the margin of *United States v. Braniff Airways, Inc.,* 428 F.Supp. 579 (W.D.Tex.1977). Although it dismissed the indictment for other reasons, the Braniff court commented in passing: "Any close examination of the indictment strongly suggests that it fails to set forth the specific acts and particular facts constituting the alleged offenses, and thus failed to state the essential elements of the crime which is charged." *Id.* at 584–86 n. 5.

5. While this Sixth Amendment violation alone is sufficient to invalidate count one, I also conclude that the same infirmities subvert the Fifth Amendment guarantee that the appellants will be convicted only upon facts presented to the grand jury that indicted them—an infirmity which even a bill of particulars or additional discovery could not possibly cure.