**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arthur P. TRANAKOS,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William PILGRIM,
Defendant–Appellant.**

**Nos. 89–8021, 89–8022.**

United States Court of Appeals,
Tenth Circuit.

Aug. 15, 1990.

See also, D.C., 690 F.Supp. 971.

**1424**

Mike DeGeurin of Foreman, DeGeurin & Nugent, Houston, Tex., for defendant-appellant, Arthur P. Tranakos.

Donald I. Schultz of Holland & Hart, Cheyenne, Wyo., for defendant-appellant, William Pilgrim.

Francis Leland Pico, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., Maynard D. Grant, Asst. U.S. Atty., with him on the brief), D. Wyo., Cheyenne, Wyo., for plaintiff-appellee.

Before LOGAN, MOORE and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Arthur Tranakos and William Pilgrim appeal their convictions for conspiring to defraud the United States, 18 U.S.C. § 371, and obstructing justice, 18 U.S.C. § 1503. Tranakos also appeals a conviction for preparing and presenting fraudulent tax returns, 26 U.S.C. § 7206(2). We affirm.

### I.

Tranakos and Pilgrim contend that their convictions should be reversed because their statutory and constitutional rights to a speedy trial were violated.

On February 24, 1983, Tranakos, Pilgrim, Lowell Anderson, Ronald Ellsworth, and others were indicted by a federal grand jury in Wyoming for conspiring to defraud the United States by selling common-law trusts which were used to evade federal income taxes. Tranakos was also charged with preparing and presenting fraudulent tax returns for Thomas Woodward and his wife, and with obstructing justice by hindering a grand jury subpoena to Richard

Roeske. In addition, Pilgrim was charged with hindering a subpoena to Woodward.

After both district judges in Wyoming recused themselves, the case was assigned to Judge Fred Winner of the District of Colorado. Judge Winner retired soon thereafter, and the matter was reassigned to Judge John Kane Jr., also of the District of Colorado. The government had not yet located Ellsworth, so Judge Kane in May granted the government's motion to exclude from the calculation of the time limits of the Speedy Trial Act all time until Ellsworth became available, which was not until 1986.

In October 1983, Judge Kane dismissed the indictment for prosecutorial misconduct. *United States v. Anderson*, 577 F.Supp. 223, 234 (D.Wyo.1983). We reversed. *United States v. Anderson*, 778 F.2d 602, 606 (10th Cir.1985). The defendants moved for reconsideration. While the motion was pending, Lowell Anderson died. The motion was denied, and the final mandate issued on May 1, 1986.

The case was then assigned to the newly-appointed Judge Alan Johnson of the District of Wyoming, who held a hearing on January 16, 1987 during which all pending motions were argued. It thereafter came to light that his wife was on the grand jury which indicted the defendants, so he disqualified himself in March 1987.

In September 1987, the case was reassigned to a district judge in Kansas, who withdrew six weeks later because his circumstances had changed.

In March 1988, the matter was reassigned to Judge Aldon Anderson of the District of Utah. On May 25, he held that the grand jury which indicted the defendants was invalidly drawn. He stayed the

proceedings, and a new grand jury brought a superseding indictment on July 15.

The trial was rescheduled for August, but continued by agreement of the parties in order to discuss plea negotiations. When no agreement could be reached, Judge Anderson set January 3, 1989 for a hearing on all remaining motions, with trial to begin at the conclusion of the hearing. The hearing and trial took place as scheduled. The defendants were convicted after a seven-day trial.

### A.

The defendants claim that the seventy days within which the Speedy Trial Act, 18 U.S.C. §§ 3161–74, required that they be brought to trial elapsed [1] between the hearing before Judge Johnson in January 1987 and the reassignment of the case to Judge Anderson in March 1988.[2] The government contends that the period was excluded from the time calculation by section 3161(h)(1)(F), which excludes "[a]ny period of delay resulting from ... any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." The defendants respond that no motion was pending, and that section 3161(h)(1)(F) should not apply to these facts anyway.

### 1.

The defendants have overlooked the following statement made by Tranakos's attorney to Judge Johnson:

"I have filed a motion to dismiss Count[s] 7 and 8, Your Honor, and ... I don't want to withdraw those motions yet, but I'm still trying to conduct discovery.... But if you'll just hold that I might try to reurge that later...."

---

1. They also contend that the indictment should have been dismissed for a failure to satisfy 18 U.S.C. § 3161(a), which provides that "the appropriate judicial officer, at the earliest practicable time, shall ... set the case for trial on a day certain." We reject this argument. The Act provides no remedy for a violation of section 3161(a). *See* 18 U.S.C. § 3162(a) (providing remedies for violations of sections 3161(b) and 3161(c) only). Section 3161(a) is not an independent requirement; it is merely part of the

process by which the court can fulfill the Act's time limits. *See* H.R.Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 7401, 7421–22.

2. They concede that, for various reasons, no nonexcludable time elapsed either before the January 1987 hearing or after the March 1988 reassignment. *See* Brief of Appellant Pilgrim at 17–18; Brief of Appellant Tranakos at 21.

R.Supp. Vol. II at 34–35.[3] This motion remained pending until Judge Anderson denied it on April 19, 1988.

Clearly, no nonexcludable time elapsed as to Tranakos between 1987 and 1988. 18 U.S.C. § 3161(h)(1)(F). Under 18 U.S.C. § 3161(h)(7), any "reasonable period of delay" excludable as to one defendant is excludable as to his or her codefendants. In determining whether it is reasonable to apply this delay to Pilgrim as well, we must weigh the "relevant circumstances." *United States v. Theron*, 782 F.2d 1510, 1514 (10th Cir.1986).

One important factor is that Pilgrim was free on bond. *See United States v. Mobile Materials, Inc.*, 871 F.2d 902, 917 (10th Cir.), *modified on other grounds*, 881 F.2d 866 (10th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990); *United States v. Theron*, 782 F.2d at 1516.

Also, "the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial" must be considered. *United States v. Theron*, 782 F.2d at 1514. Where "the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses," a single trial is preferred. *United States v. Mobile Materials, Inc.*, 871 F.2d at 916. This is such a case, for the defendants were charged with a single conspiracy. *See, e.g., United States v. Wright*, 826 F.2d 938, 945 (10th Cir.1987).

We also consider whether or not Pilgrim zealously pursued a speedy trial. *See United States v. Mobile Materials, Inc.*, 871 F.2d at 917. He never sought a severance from the other defendants. He did move for dismissal on speedy trial grounds, but he also moved for continuances when Judges Johnson and Anderson set trial dates.

It is reasonable to apply the exclusion occasioned by Tranakos to Pilgrim as well.[4]

### 2.

The defendants contend that section 3161(h)(1)(F) does not apply to this case because it excludes delays "resulting from" pending pretrial motions, and this delay actually resulted from the lack of a presiding judge. However, the exclusions in section 3161(h) are automatic, so no inquiry into the true cause of a delay is proper. *United States v. Wilson*, 835 F.2d 1440, 1442–43 (D.C.Cir.1987); *United States v. Montoya*, 827 F.2d 143, 150–51 (7th Cir.1987); *United States v. Felton*, 811 F.2d 190, 195 (3d Cir.), *cert. denied*, 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987); *United States v. Velasquez*, 802 F.2d 104, 105 (4th Cir.1986); *United States v. Keefer*, 799 F.2d 1115, 1121–22 (6th Cir.1986); *United States v. Matsushita*, 794 F.2d 46, 50–51 (2d Cir.1986); *United States v. Henderson*, 746 F.2d 619, 622–23 (9th Cir.1984), *aff'd*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986); *United States v. Stafford*, 697 F.2d 1368, 1371–72 (11th Cir.1983); *United States v. Brim*, 630 F.2d 1307, 1312–13 (8th Cir.1980), *cert. denied*, 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981).

*Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), compels us to apply section 3161(h)(1)(F) automatically. For one thing, the Court

---

**3.** Inexplicably, the transcript of this hearing was not included in the original record on appeal. We had to supplement the record before a decision could be rendered. While our rules encourage the omission of superfluous material, *see* 10th Cir.R. 10.2, proceedings "necessary" to a party's position must be included, Fed.R. App.P. 10(b)(1), (3).

**4.** "Our method of [deciding whether or not to apply the exclusion to Pilgrim] is not one of mathematical calculation, but one that considers the purpose of the Speedy Trial Act, the facts of the case, the status of the defendant, and the recommendations of the Guidelines to the Administration of the Speedy Trial Act. As a result, we do not express section 3161(h)(7)'s 'reasonable period' as a fixed span of time, the running of which forces dismissal of an indictment...." *United States v. Mobile Materials, Inc.*, 871 F.2d at 917. Still, we note that other courts have excluded comparably long delays under section 3161(h)(7). *See, e.g., United States v. Mobile Materials, Inc.*, 871 F.2d at 912 (thirteen months); *United States v. DeLuna*, 763 F.2d 897, 921 (8th Cir.) (seventeen months), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985).

quoted with apparent approval the Ninth Circuit's conclusion that the exclusion so applies. *See id.* at 327, 106 S.Ct. at 1875 (quoting *United States v. Henderson,* 746 F.2d at 622); *see also id.* 476 U.S. at 332, 106 S.Ct. at 1877 (referring to the period between filing and hearing as "automatically excludable under § 3161(h)(1)(F)").

Moreover, the Supreme Court vacated the decision of the First Circuit in *United States v. McAfee,* 780 F.2d 143 (1st Cir. 1985), and remanded it for further consideration in light of *Henderson. United States v. McAfee,* 479 U.S. 805, 107 S.Ct. 49, 93 L.Ed.2d 10 (1986). In that case, a pretrial motion was filed, but not taken under advisement for an unreasonably long time. Also, the defendant waived his rights under the Act. The First Circuit held that section 3161(h)(1)(F) excludes only reasonably necessary delays, so not all of the time consumed by the motion in question was excludable. *United States v. Pringle,* 751 F.2d 419, 431 (1st Cir.1984). The court also held that Speedy Trial Act rights are nonwaivable, but a delay actually caused by an attempted waiver should be excluded. *Id.* at 434. On appeal after remand, the court held that the delay was caused not by the defendant's waiver, but by an "administrative mixup" which prevented the district court from realizing that the case required his attention. *United States v. McAfee,* 780 F.2d at 145–46.

The Supreme Court held in *Henderson* that section 3161(h)(1)(F) applies to the entire period a motion is pending. *See Henderson v. United States,* 476 U.S. at 330, 106 S.Ct. at 1876. After *McAfee* was vacated and remanded, the defendant argued that section 3161(h)(1)(F) did not apply because the delay had resulted not from the pretrial motion but from the administrative breakdown. The court disagreed.

"First, there would have been no remand in *Pringle* except for our rule that (F) only permitted reasonably necessary delay. Second, the Court's holding that '[t]he provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion' must include time

consumed because of an administrative mixup. As Justice White pointed out in his dissent: 'There is no requirement that the hearing be held promptly, and the reason for the delay is irrelevant.' "

*United States v. McAfee,* 808 F.2d 862, 864 (1st Cir.1986) (quoting *Henderson v. United States,* 476 U.S. at 331, 334, 106 S.Ct. at 1877, 1878). If section 3161(h)(1)(F) only excluded delays actually caused by pretrial motions, *McAfee* would not have been vacated.

### B.

■ The defendants also contend that the delay between their indictment and trial violated their Sixth Amendment right to a speedy trial. A Sixth Amendment speedy trial claim is assessed by balancing the length of the delay, the reason for the delay, whether the defendant asserted his right to a speedy trial, and whether the delay prejudiced the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). "[N]o single factor is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.' " *Perez v. Sullivan,* 793 F.2d 249, 254 (10th Cir.) (quoting *Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193), *cert. denied,* 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986).

### 1.

The length of the delay is "a triggering mechanism;" only if the period is "presumptively prejudicial" need we inquire into the other factors. *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2191. Starting from the date of the indictment, *United States v. Padilla,* 819 F.2d 952, 963 (10th Cir.1987), the delay in this case was nearly six years. While a longer delay is tolerable for a complex conspiracy than for an ordinary crime, *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192, this delay clearly triggers consideration of the other factors. *See United States v. Hay,* 527 F.2d 990, 994 (10th Cir.1975) (further analysis triggered by seventeen-month delay in prosecution for conspiracy to defraud the United States), *cert. denied,* 425 U.S. 935, 96 S.Ct.

1666, 48 L.Ed.2d 176 (1976); *see also, e.g.,* *United States v. Colombo,* 852 F.2d 19, 24 (1st Cir.1988).

### 2.

The causes of the delay may be stated as follows: The delay from February to October 1983 was caused by Ellsworth's unavailability. The delay from November 1983 to May 1986 was attributable to the interlocutory appeal. From June 1986 to February 1987, trial was delayed by waivers and other motions by the defendants. The delay from March 1987 to March 1988 was attributable to the difficulty in finding a judge to handle the case. From April to July of 1988, trial was delayed by more defense motions, and by Judge Anderson's decision requiring the defendants to be reindicted. No progress was made in August 1988 because the court, at the defendants' urging, stayed the proceedings to allow for plea negotiations. From September 1988 to the beginning of the trial in January 1989, the court was concerned with more defense motions.

The weight given to each delay varies with its cause.

"A deliberate attempt to delay the trial ... should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily.... Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

*Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted).

■ Delay due to the unavailability of a necessary individual is justified, so the delay caused by codefendant Ellsworth's unavailability shall not be weighed against the government. *United States v. Redmond,* 546 F.2d 1386, 1388–89 (10th Cir.1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1645, 56 L.Ed.2d 83 (1978).

■ The same is true of the delay caused by the interlocutory appeal. *United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986).

■ The difficulty in finding a judge to handle the case weighs against the government. *United States v. Jenkins,* 701 F.2d 850, 856 (10th Cir.1983) (citing *United States v. Grismore,* 564 F.2d 929, 932 (10th Cir.1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978)); *United States v. Brown,* 600 F.2d 248, 254 (10th Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979).

The remaining delays are attributable to motions filed and continuances sought by the defendants. These delays do not weigh against the government. *See United States v. Loud Hawk,* 474 U.S. at 316–17, 106 S.Ct. at 656–57 (quoting *United States v. Auerbach,* 420 F.2d 921, 924 (5th Cir. 1969), *cert. denied,* 399 U.S. 905, 90 S.Ct. 2195, 26 L.Ed.2d 560 (1970)); *United States v. Beery,* 678 F.2d 856, 869 (10th Cir.1982).

In short, only the thirteen-month delay attributable to the difficulty in finding a judge to replace Judge Johnson weighs against the government.

### 3.

The third factor, the assertion of the right to a speedy trial, does not favor these defendants.

On May 1, 1986, Judge Johnson set the trial for July 7. In early June, each defendant waived his or her statutory speedy trial rights and moved to vacate the trial date.[5] Trial was reset for March 9, 1987. On March 3, Tranakos requested another continuance. Judge Johnson's recusal mooted this motion.

Between the recusal and the assignment of the case to Judge Anderson, each defendant moved for dismissal for failure to provide a speedy trial.

---

5. Each defendant but Pilgrim did so in writing. Pilgrim now contends that he opposed this delay. The record is to the contrary: In a hearing before Judge Anderson, government counsel told the court that Pilgrim's attorney had stated in a telephone hearing before Judge Johnson that his client would join these motions. R.Supp.Vol. III at 40–41. Pilgrim's counsel was present at the hearing before Judge Anderson, and made no effort to contradict this statement.

After the defendants were reindicted, Judge Anderson set the trial for August 24, 1988. By mutual agreement of the parties, the court vacated the date and granted a continuance so the parties could attempt to negotiate a plea agreement.

We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire. *See United States v. Loud Hawk,* 474 U.S. at 314–15, 106 S.Ct. at 655–56; *see also, e.g., Rayborn v. Scully,* 858 F.2d 84, 92–93 (2d Cir.1988), *cert. denied,* 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989). These defendants did not want a speedy trial; they were only interested in delaying the trial or avoiding it altogether. *Cf. Barker v. Wingo,* 407 U.S. at 535, 92 S.Ct. at 2194.

### 4.

Two types of prejudice are relevant in this case: anxiety of the defendant and impairment of the defense. *See Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193. We presume some prejudice from the fact that the defendants lived for six years "under a cloud of suspicion and anxiety," *id.* at 534, 92 S.Ct. at 2194. *United States v. Huffman,* 595 F.2d 551, 558 (10th Cir. 1979). The defendants also claim that their ability to defend themselves was impaired by co-conspirator Lowell Anderson's death and prosecution witness Thomas Woodward's poor memory.

■ They contend that Anderson, had he survived, would have testified on their behalf, but they have not "stated with particularity ... what exculpatory testimony would have been offered." *United States v. Villano,* 529 F.2d 1046, 1060 (10th Cir.), *cert. denied,* 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1193 (1976). Because they "offer[ ] no proof as to how [Anderson], if present, would testify," *United States v.*

*Jenkins,* 701 F.2d at 857, they have failed to show the required "causal relationship between [Anderson's death] and the prejudice claimed," *Perez v. Sullivan,* 793 F.2d at 257 n. 10. The death of the central figure in the conspiracy, without more, does not establish prejudice. *See United States v. Lane,* 465 F.2d 408, 412 (5th Cir.1972).

■ Nor can they claim prejudice from the failure of Woodward's memory. Prejudice occurs only when *"defense* witnesses are unable to recall accurately events of the distant past. *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193 (emphasis added). If the witnesses support the prosecution, *its* case will be weakened...." *Id.* at 521, 92 S.Ct. at 2187, (emphasis added). The failure of a prosecution witness's memory does not support a claim that the Sixth Amendment was violated. *See United States v. Tercero,* 640 F.2d 190, 195 (9th Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *United States v. Mulligan,* 520 F.2d 1327, 1333 (6th Cir.1975), *cert. denied,* 424 U.S. 919, 96 S.Ct. 1123, 47 L.Ed.2d 325 (1976); *United States v. Shepherd,* 511 F.2d 119, 124 (5th Cir.), *reh'g denied,* 514 F.2d 1072 (5th Cir.1975); *United States ex rel. Walker v. Henderson,* 492 F.2d 1311, 1316 (2d Cir.), *cert. denied,* 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1974); *United States v. Heinlein,* 490 F.2d 725, 729 n. 4 (D.C.Cir. 1973); *State v. Morris,* 230 Mont. 311, 749 P.2d 1379, 1382 (1988); *State v. Ossana,* 739 P.2d 628, 632 (Utah 1987).[6]

### 5.

■ The Sixth Amendment was not violated. While the delay was quite substantial, most of it was justified. The defendants did not seek a speedy trial, and they have shown little prejudice.[7]

---

**6.** Some courts, without discussing the issue, have considered claims that the dimming of a prosecution witness's memory prejudiced the defendant. *See, e.g., United States v. MacDonald,* 632 F.2d 258, 263 (4th Cir.1980), *rev'd on other grounds,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). Also, the California Supreme Court has held that the failure of a prosecution witness's memory should be considered,

but this holding was under the state constitution. *See State v. Hill,* 37 Cal.3d 491, 209 Cal. Rptr. 323, 325, 327, 691 P.2d 989, 991, 993 (1984).

**7.** Even if we were to treat Woodward as a defense witness, since many of his memory lapses occurred during cross-examination, our decision would be the same.

## II.

Both defendants argue that their conspiracy convictions were not supported by sufficient evidence. Evidence is sufficient if, viewed in the light most favorable to the government, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Neither defendant denies the existence of a conspiracy to defraud the United States, but each claims not to have been part of the conspiracy. " 'The connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt.' " *United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.1988) (quoting *United States v. Batimana,* 623 F.2d 1366, 1368 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980)), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 74 (1989). The evidence may be circumstantial. *United States v. Troutman,* 814 F.2d 1428, 1446–47 (10th Cir.1987). A defendant who acts in furtherance of the object of the conspiracy may be presumed to be a knowing participant. *United States v. Penagos,* 823 F.2d 346, 348 n. 1 (9th Cir.1987); *see United States v. Pack,* 773 F.2d 261, 265–66 (10th Cir.1985).

Lowell Anderson sold trust packages which people used to purportedly transfer title to their income-producing assets into a domestic trust which was owned by a foreign trust. The customers would then claim that they owed no federal tax on the income because it belonged to the foreign trust. In fact, the customers never relinquished control over the assets. They maintained control over the trusts by using banks which accepted rubber-stamp signatures of fictitious names to control accounts. Moreover, the customers had undated, presigned resignation letters of the trustees so title over the assets could be regained at any time. R.Vol. VI at 11–19.

Tranakos, a tax attorney, appeared with Anderson at various sales seminars. Anderson told those in attendance that Tra-nakos certified the legitimacy of the trust program. R.Vol. VIII at 256. Tranakos also prepared tax returns for some of the people who bought the package. R.Vol. VI at 70; R.Vol. VIII at 28. When Richard Roeske, one of Anderson's customers, received a grand jury subpoena, Tranakos advised him to lie about his control over certain bank accounts. *See infra* part V.

Pilgrim, also an attorney, worked for Anderson. He hired a secretary and instructed her on filling out the forms in the trust packages. R.Vol. VI at 216, 220–24. He also served as a trustee of Pioneer Trust Co., which purportedly was the trustee for the customers' foreign trusts. R.Vol. VI at 59–61, 228–29. When Thomas Woodward received a grand jury subpoena, Pilgrim told him not to turn over any trust documents, and to keep one of the trusts a secret. R.Vol. VI at 56–58.

This evidence sufficiently connects Tranakos and Pilgrim to the conspiracy.

## III.

Tranakos argues that the conspiracy count should have been dismissed under *United States v. Dahlstrom,* 713 F.2d 1423, 1428 (9th Cir.1983), *cert. denied,* 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984), where the Ninth Circuit reversed the convictions under 26 U.S.C. § 7206(2) and 18 U.S.C. § 371 of defendants who sold foreign trusts similar to those sold by the defendants herein because "the legality of the tax shelter program ... was completely unsettled by any clearly relevant precedent on the dates alleged in the indictment." *Id.* at 1428.

The Ninth Circuit has since limited *Dahlstrom* to defendants who merely advocate tax strategies of debatable legality, as opposed to those who actually assist others in effectuating those strategies. *United States v. Krall,* 835 F.2d 711, 713–14 (8th Cir.1987); *see United States v. Schulman,* 817 F.2d 1355, 1359 (9th Cir.) *cert. dismissed,* 483 U.S. 1042, 108 S.Ct. 362, 97 L.Ed.2d 803 (1987); *United States v. Russell,* 804 F.2d 571, 576 (9th Cir.1986) (Ferguson, J., concurring). Tranakos did more

than advocate the trusts, so he can draw no support from *Dahlstrom*. *See United States v. Vreeken*, 803 F.2d 1085, 1091 & n. 2 (10th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

Of course, the government still must show that the law clearly prohibited this conduct. *United States v. Solomon*, 825 F.2d 1292, 1297 (9th Cir.1987), *cert. denied*, 484 U.S. 1046, 108 S.Ct. 782, 98 L.Ed.2d 868 (1988). The trusts were shams to the extent they purported to redirect income, for the putative beneficiary of each trust exercised full control over the putative corpus. *Sandvall v. Commissioner*, 898 F.2d 455, 458 (5th Cir.1990); *United States v. Krall*, 835 F.2d at 714; *Zmuda v. Commissioner*, 731 F.2d 1417, 1421 (9th Cir.1984). The use of sham transactions to avoid tax liability has long been prohibited. *See, e.g., United States v. Basye*, 410 U.S. 441, 450, 93 S.Ct. 1080, 1086, 35 L.Ed.2d 412 (1973); *Commissioner v. Culbertson*, 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1212–13, 93 L.Ed. 1659 (1949); *Lucas v. Earl*, 281 U.S. 111, 114–15, 50 S.Ct. 241, 241, 74 L.Ed. 731 (1930).

## IV.

■ In addition, Tranakos contends that his conviction under 18 U.S.C. § 7206(2) cannot stand because the Woodwards altered the returns he prepared before filing them. This argument misstates the evidence.

In 1981, Tranakos prepared tax returns for Thomas and Lucy Woodward for the years 1979 and 1980. For each year, Tranakos prepared two returns: a joint personal return for them and a nonresident alien return for Mr. Woodward's foreign trust. R.Vol. VI at 70–71, 87–88. The two joint returns declared a total of $10,000 in long-term capital gains from various mineral leases, supposedly received from the foreign trust. *Id.* at 75, 78. In fact, as Tranakos was aware, no such transaction ever took place, and the Woodwards' actual capital gains from mineral leases were about $400,000. *Id.* at 91–92.

Tranakos instructed the Woodwards to file the personal returns, but said that the nonresident returns were attached only for the Woodwards' information, and would have to be discussed later. *Id.* at 80. He also included a cover letter for the Woodwards to send along with the personal returns. *Id.* at 81–82. The Woodwards filed the personal returns, but never filed the nonresident returns. *Id.* at 70, 130.

Tranakos's theory is that no fraud would have occurred had the Woodwards filed the nonresident returns with the personal returns, as he intended. This argument fails for two reasons. First, Tranakos clearly intended for the Woodwards to file the personal returns separately from the nonresident returns. His letters to the Woodwards and to the IRS only discuss filing the personal returns. Second, even taken as a group, the returns were fraudulent because the nonresident returns did not accurately reflect the information Woodward provided to Tranakos (they understated the Woodwards' income from mineral leases by approximately $100,000, *see* Plaintiff's Ex. 32 at 10; Plaintiff's Ex. 33 at 36), R.Vol. VI at 144–45, and they claimed nonexistent expenses, *id.* at 89–90.

## V.

■ Tranakos also contends that his conviction for obstructing Roeske's grand jury testimony was not supported by sufficient evidence. Roeske, who purchased a trust package from Anderson and kept his income in a Montana bank under a fictitious name, testified as follows:

"Q. What did Mr. Tranakos tell you?

A. He said that—he looked at me and he smiled and he said, 'Well, you don't own any trusts, do you?'

And then he said—he said, 'You don't have any bank accounts in Montana, do you?'

And I took that to mean that all of this flow of paper, this complexity of paper meant that these things legally were not under my control and that was the whole reason for setting up this vast matrix of trusts and that I didn't have control over these things or I didn't own the bank accounts. It was a matter of semantics as far as I understood it at the time.

. . . .

Q. What happened when you appeared before the grand jury then?

A. They . . . asked me if I had any bank accounts in Montana and I said no. Or they might have said, 'Do you know of any bank accounts in Montana?' And I said, 'No.'

. . . .

Q. You used the word 'semantics' a while ago. It was not what he said, it was the way he said it to you, the smile [you] said he had on his face?

A. Yes."

R.Vol. VIII at 283–84, 313. Tranakos concedes that Roeske lied to the grand jury, but argues that he himself did not "endeavor[ ] to influence, obstruct, or impede, the due administration of justice," 18 U.S.C. § 1503.

One who proposes to another that the other lie in a judicial proceeding is guilty of obstructing justice. *United States v. Davis,* 752 F.2d 963, 973 n. 11 (5th Cir. 1985). The statute prohibits elliptical suggestions as much as it does direct commands. *See United States v. Russell,* 255 U.S. 138, 141–43, 41 S.Ct. 260, 260–61, 65 L.Ed. 553 (1921); *United States v. Arnold,* 773 F.2d 823, 834 (7th Cir.1985); *United States v. O'Keefe,* 722 F.2d 1175, 1181 (5th Cir.1983). A reasonable finder of fact could have decided on this evidence that Tranakos suggested to Roeske that Roeske falsely tell the grand jury that he had no Montana bank accounts.

## VI.

 Finally, Pilgrim contends that the district court erred when it refused to sever the charge of obstructing Woodward's grand jury testimony from the conspiracy count. The government responds that the motion was properly denied because it was too vague. A defendant seeking a severance of counts must show " 'the specific testimony he will present about one offense, and his specific reasons for not testifying about others, to justify severance.' " *United States v. Hernandez,* 829 F.2d 988, 991 (10th Cir.1987) (quoting *United States v. Bronco,* 597 F.2d 1300, 1303 (9th Cir. 1979)), *cert. denied,* 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988); *see also*

*United States v. Valentine,* 706 F.2d 282, 291 (10th Cir.1983).

In the brief supporting his motion to sever, Pilgrim identified his proposed testimony as follows:

"Allegedly, Defendant Pilgrim told Mr. Woodward not to produce certain documents in response to a grand jury subpoena, and not to answer certain grand jury questions truthfully. . . .

. . . Defendant Pilgrim denies making any such statements. . . . Defendant Pilgrim would like to testify . . . concerning what he in fact said to Woodward about responding to the subpoena, and what Woodward said to him about such response."

Supp.R., Doc. 243 at 1–2. This was a sufficient "attempt to outline or detail his proposed testimony. . . ." *United States v. Hernandez,* 829 F.2d at 991.

Regarding prejudice, the brief stated,

"[T]aking the witness stand could prove incriminating on the conspiracy count. As just a few examples, Pilgrim might be cross-examined as a lawyer about his knowledge of ethics, trust law, or tax law; about the numerous other events the government contends implicate him in the conspiracy charged; and about other statements Woodward alleges that bear on Defendant Pilgrim's knowledge of the conspiracy."

Supp.R., Doc. 243 at 4. This, too, is "enough information . . . to enable [the court] intelligently to" consider the motion. *United States v. Valentine,* 706 F.2d at 291.

A sufficiently specific severance motion calls upon the district court to decide whether or not " 'the claim of prejudice is genuine and . . . to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.' " *United States v. Valentine,* 706 F.2d at 291 (quoting *Baker v. United States,* 401 F.2d 958, 977 (D.C.Cir. 1968) (quoting *Drew v. United States,* 331 F.2d 85, 88 (D.C.Cir.1964)) (footnotes omitted)). The decision is within the court's sound discretion. *United States v. Hayes,* 861 F.2d 1225, 1231 (10th Cir.1988).

The court did not abuse its discretion. The suggested prejudice was not substantial.[8] The increase in judicial efficiency from joining the obstruction count with the conspiracy count, when the former was one of the overt acts underlying the latter, was significant. *See, e.g., United States v. Disla,* 805 F.2d 1340, 1353 (9th Cir.1986); *United States v. Dounias,* 777 F.2d 346, 350 (7th Cir.1985); *United States v. Benz,* 740 F.2d 903, 912 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985).

## VII.

While the delay in bringing these defendants to trial was unfortunate, it did not violate the Speedy Trial Act or the Sixth Amendment. Furthermore, the convictions were supported by sufficient evidence and were not contrary to *United States v. Dahlstrom.* Finally, Pilgrim's motion to sever was properly denied.

The judgment of the district court is AFFIRMED.

---

**8.** In fact, we question how many of the topics mentioned by Pilgrim would come within "the subject matter of the direct examination and matters affecting the credibility of the witness," Fed.R.Evid. 611(b).