**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 24 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DARIAN HUNTER,

    Defendant-Appellant.

No. 00-1434
(D.C. No. 96-CR-419-10-D)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **KELLY** and **LUCERO**, Circuit Judges.

Darian Hunter appeals the denial of his motion that the government violated his statutory and constitutional rights to a speedy trial. We find the delay between his first appearance before a magistrate and the disposition of his case was largely of his own making. Consequently, we AFFIRM.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

On October 23, 1996, the government issued a five-count indictment against Larry Charles Moore for his involvement as the leader of a drug trafficking ring. On November 21, 1996, the government filed a superseding indictment, adding seven other defendants. On May 20, 1998, the government filed a second superseding indictment, adding Defendant-Appellant Darian Hunter. (Vol. I: 454.)

On June 15, 1998, Hunter made his first appearance in court on this matter, before Magistrate Judge Richard M. Borchers. (Vol. I: 480.) On June 24, Hunter was arraigned, pled not guilty, and was remanded to custody. (Vol. I: 494.) At his arraignment (Vol. IV at 2 (transcript of arraignment)) and in the Discovery Conference Memorandum and Order, filed the same day (Vol. I: 493 at 9), Hunter was informed that before he had been indicted, the court had designated the case "complex" for purposes of the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(B)(ii). (Vol. I:82.)

On August 3, Hunter filed 17 motions, including a motion to join in his co-defendants' motions. (Vol. I, index: 511-529; see also Vol. I:540 (listing Hunter's motions).) Hunter made numerous other motions, approximately 45 in all, throughout the litigation (May 1998 - June 2000). (See Answer Brief, Attachment 2 (summary of Hunter's motions).) In addition, Hunter and his co-defendant,

Michael Crumpton, sought changes of counsel on a number of occasions. (See, generally, Supp. Vol. I, index: 700 -761.)

On December 23, 1999, Hunter filed a motion to dismiss the indictment for violation of his speedy trial rights. (Vol. II: 806.) The court issued an order denying that motion on February 8, 2000. (Vol. II: 830.) In that order, the court noted that many of the motions which Hunter had made on August 3, 1998, were still pending. (Vol. II: 830.) On March 10, 2000, the court issued an order which disposed of all of Hunter's outstanding motions at that time. (Vol. II: 847.)

On March 24, 2000, Hunter filed his first notice of disposition, requesting to change his plea from not guilty to guilty. (Supp. Vol. I, index: 851.) On April 14, the court stated on the record that the previous day's (4/13) status conference had made it unclear whether Hunter had indeed decided to change his plea. (Supp. Vol. I, index: 857.) This statement was made amidst another attempt by Hunter to change lawyers. (Supp. Vol. I, index: 857.) The court advised the parties that, in the event Hunter's notice of disposition was withdrawn, it would schedule a hearing to prepare the case for trial. (Supp. Vol. I, index: 857.)

On April 27, after permitting Hunter to change lawyers, the court ordered Hunter's new lawyer to advise it by May 22 whether Hunter still planned to go ahead with his change of plea as had originally been scheduled. (Supp. Vol. I,

index: 861.)  On May 22, Hunter confirmed that he intended to change his plea from not guilty to guilty. (Supp. Vol. I, index: 862.)

On May 23, the court rescheduled the change-of-plea hearing from June 8 to June 27. (Supp. Vol. I, index: 863.)  On June 27, 2000, Hunter changed his plea before the court. (Supp. Vol. I, index: 878.)  Hunter's plea agreement, filed June 23, 2000, permitted him to enter a conditional plea of guilty, reserving the right to appeal the court's denial of his motion to dismiss the indictment on the ground that his rights to a speedy trial had been violated. (See Answer Brief, Attachment 1 (Plea Agreement).)

## DISCUSSION

Hunter asserts that the government violated his statutory right to a speedy trial under the Speedy Trial Act, 18 U.S.C. §§ 3161 to 3174, and his constitutional right to a speedy trial pursuant to the Sixth Amendment.  In addition, he appends two more claims: first, that the government violated his Fifth Amendment right of due process by intentionally delaying his indictment; and second, that Hunter's trial counsel provided ineffective assistance by not asserting Hunter's rights to a speedy trial.

A. Speedy Trial Act

"The Speedy Trial Act requires that a criminal trial must commence within 70 days of the latest of a defendant's indictment, information, or appearance, barring periods of excludable delay." Henderson v. United States, 476 U.S. 321, 326 (1986) (citing 18 U.S.C. § 3161(c)(1)). Thus, Hunter's speedy trial "clock" began to run on June 15, 1998, when he first appeared before the magistrate judge.

The Supreme Court held that 18 U.S.C. § 3161(h)(1)(F) excludes "from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of the hearing on that motion." Henderson, 476 U.S. at 330; see also United States v. Tranakos, 911 F.2d 1422, 1427 (10th Cir. 1990) ("The Supreme Court held in Henderson that section 3161(h)(1)(F) applies to the entire period a motion is pending.").[1] Hunter concedes this but argues that the trial court unreasonably delayed ruling on his motions. See Opening Brief at 7-9.[2] The Henderson Court, however, rejected precisely this argument. See Henderson, 476 U.S. at 330. Thus, the time from August 3, 1988 (when he filed his first set of pre-trial motions), to March 10, 2000 (when the court disposed of the last of his

_____

[1]In addition to the time a motion is pending, the Court pointed out that § 3161(h)(1)(J) excludes up to 30 more days after a hearing on pre-trial motions when the court has taken the matters "under advisement."

[2]Hunter never clarifies what relief he believes he is entitled to.

motions), i.e., while Hunter's pre-trial motions were pending, was excluded from the Speedy Trial Act's 70-day limitation period.

On March 24, 2000, Hunter filed his first notice of disposition, acknowledging that he wanted to change his plea to guilty. Since a change-of-plea hearing is necessary to establish the knowing and voluntary nature of the defendant's guilty plea, see Fed. R. Crim. P. 11(d), and to determine the sufficiency of its factual basis, see Fed. R. Crim. P. 11(f), a "notice of disposition" like this one is treated as a pre-trial motion requiring a hearing for purposes of the Speedy Trial Act. See United States v. Santiago-Becerril, 130 F.3d 11, 19-20 (1st Cir. 1997); United States v. Jenkins, 92 F.3d 430, 440 (6th Cir. 1996). As such, the entire period between notifying the court that he wanted to change his plea and the change-of-plea hearing itself was excluded for purposes of the Speedy Trial Act.[3]

Consequently, there were only two, non-excluded periods when the 70-day limitation period was elapsing: from June 16, 1998 to August 3, 1998 (48 days), and from March 10, 2000 to March 24, 2000 (14 days). Only 62 days had expired for purposes of the Speedy Trial Act; there was no violation.

_____

[3]The irregularities that resulted from Hunter trying to change counsel at that time did not set the clock ticking again. His change of plea request was under consideration throughout the transition period from one lawyer to another. And, indeed, on May 22, 2000, Hunter's new counsel re-affirmed that Hunter wanted to change his plea to guilty.

B. Sixth Amendment Right to a Speedy Trial

> In determining whether a defendant has been deprived of his
> constitutional right to a speedy trial under the Sixth Amendment, a
> court should consider and balance the following factors: (1) the
> length of the delay; (2) the reason for the delay; (3) the defendant's
> assertion of his right to a speedy trial; and (4) prejudice to the
> defendant.  Of these factors, the length of the delay is the threshold
> consideration.  Only if the delay is "presumptively prejudicial" will
> the court need to consider the remaining factors.

United States v. Hill, 197 F.3d 436, 443-44 (10th Cir. 1999) (citations omitted).

1. Length of Delay

Hunter was brought before a magistrate in June 1998 and his trial was set for June 2000.  While we have declined to draw a bright line delineating what length of delay is "presumptively prejudicial," Castro v. Ward, 138 F.3d 810, 819 (10th Cir. 1998), we have acknowledged the Supreme Court's assessment that "lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." Id. (citing Doggett v. United States, 505 U.S. 647, 652 n.1 (1992)).  The trial court found that the two year delay in this case was presumptively prejudicial. (Vol. II: 830 at 6.)  The government has never disputed this finding. See id.; Answer Brief at 12.  We agree that the two years was presumptively prejudicial.

2. Reason for Delay

As described above, the reason for the delay stems almost entirely from Hunter's decisions to file approximately 45 pre-trial motions, many of which were

- 7 -

factually and legally complex, e.g., motions to suppress court-ordered wiretaps (see, e.g., Docs. 512, 558, 582, 636, 657),  and to seek to change counsel numerous times (see, e.g., Docs. 700, 714, 717, 753, 861).  While not ideal, the delay in ruling on the motions is understandable given the number of defendants and complexity of the case.  Thus, we find the reason for the delay cuts strongly against finding a violation of his Sixth Amendment right to a speedy trial.

### 3. Assertion of Speedy Trial Right

At the earliest, Hunter expressed a desire to proceed to trial expeditiously at his bail hearing on October 20, 1998. (Vol. II: 621.)  He explicitly moved to dismiss the indictment due to speedy trial violations in a motion filed December 23, 1999. (Vol. II: 806.)  Throughout this time, however, the record demonstrates that Hunter was delaying the proceedings by filing myriad motions, many of which were repetitive and of questionable merit.  "We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire." United States v. Tranakos, 911 F.2d 1422, 1429 (10th Cir. 1990).  We find that while Hunter asserted his right, his behavior is not consistent with an earnest desire to proceed to trial promptly.  Therefore, at best, this factor does not affect the analysis.

4. Prejudice

Hunter complains that waiting in jail for trial exacted a toll on himself, personally, and his family. See Opening Brief at 14-15. These are serious concerns. He also asserts that the delay prejudiced his defense because witnesses' memories fade and evidence becomes stale. See id. at 15. This fact, of course, cuts both ways; both his and the government's cases presumably became weaker by the passage of time. Moreover, we have emphasized in the past that general allegations of how delay prejudices a defense are unpersuasive:

> [D]espite Mr. Castro's general allegation that the passage of time made it more difficult for him to present a defense, he points to no specific prejudice he claims he suffered from the delay. He has not claimed that any specific witness or evidence was somehow rendered unavailable or less persuasive because of the passage of time.

Castro, 138 F.3d at 820. Likewise, Hunter fails to allege the specific ways in which the delay prejudiced his defense. We find that the prejudice factor cuts slightly in favor of Hunter.

On balance, we conclude that Hunter's Sixth Amendment right to a speedy trial has not been violated.

C. Due Process

Hunter's conditional guilty plea preserved only the speedy trial issue for appellate review. See United States v. Robertson, 45 F.3d 1423, 1434 (10th Cir.

- 9 -

1995);[4] <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Thus, he may not now assert that the government denied him due process by unreasonably delaying his indictment.[5]

## D. <u>Ineffective Assistance of Counsel</u>

Hunter alleges his trial counsel rendered constitutionally ineffective assistance by failing to pursue his right to a speedy trial. <u>See</u> Opening Brief at 16-18. He concedes, however, that "[a]s a general rule, ineffective assistance of counsel claims should be brought in collateral proceedings rather than on direct appeal." Opening Brief at 16 (citing <u>United States v. Gallegos</u>, 108 F.3d 1272, 1279 (10th Cir. 1997)). Notwithstanding this concession, he asserts that his case

---

[4]Of course, he still could have raised jurisdictional issues. <u>See</u> <u>id.</u>

[5]Furthermore, on the merits, the district court found that one reason Hunter was indicted eighteen months after his co-defendants was that the government wanted "to be sure that there was sufficient evidence to support the indictment." Vol. II:847 at 6. The Supreme Court has held that, even if a defendant's defense is somewhat prejudiced by delay in charging him, it does not violate due process for the government to wait to indict until it has amassed what it believes is sufficient evidence. <u>See</u> <u>United States v. Lovasco</u>, 431 U.S. 783, 796 (1977). Hunter does not point to any record evidence that casts doubt on the court's finding or that would indicate the government delayed indicting him intentionally, in order to gain a tactical advantage over him. <u>See</u> <u>United States v. Marion</u>, 404 U.S. 307, 324 (1971).

fits the narrow exception to this rule because his "ineffective assistance claim has been adequately developed by the district court prior to appeal." Opening Brief at 17.

To the contrary, this case is precisely the sort that should not be brought on direct review. We explained some of the reasons for this rule in United States v. Galloway, 56 F.3d 1239 (10th Cir. 1995) (en banc):

> A factual record must be developed in and addressed by the district court in the first instance for effective review. Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim. . . . [E]ven if the record appears to need no further development, the claim should still be presented first to the district court in collateral proceedings (which can be instituted without delay) so the reviewing court can have the benefit of the district court's views.

Id. at 1240 (emphasis added); see also Beaulieu v. United States, 930 F.2d 805, 807 (10th Cir. 1991) ("This [rule] encourages development of a record on the tactical reasons for trial counsel's decisions, the extent of trial counsel's alleged deficiencies, and the asserted prejudicial impact on the outcome of the trial.") (emphasis added) overruled in part by United States v. Galloway, 56 F.3d 1239 (10th Cir. 1995) (en banc). Whether Hunter's trial counsel were ineffective turns on why they made the motions and statements they did when they did, including the motions and statements asserting Hunter's speedy trial rights. The most probative evidence on this claim – whether counsel's decisions were strategic or

stupid – is not in the record.  Therefore, we dismiss his ineffective assistance of counsel claim without prejudice.

**CONCLUSION**

We conclude neither Hunter's statutory nor constitutional rights to a speedy trial were violated.  Consequently, we AFFIRM the district court's denial of his motion.

Furthermore, by entering a guilty plea that permitted appeal only of his speedy trial claim, he foreclosed this court from hearing his claim that the government unreasonably delayed his indictment.  Finally, his claim of ineffective assistance of counsel is premature; it should be brought on collateral review and, accordingly, is dismissed without prejudice.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge